### STATE of Iowa, Appellee,

*v.*

### Stephen Robert JONAS, Appellant.

### No. 15-1560

Supreme Court of Iowa.

Filed December 1, 2017

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, John Sarcone, County Attorney, and Olu A. Salami, Assistant County Attorney, for appellee.

APPEL, Justice.

In this case a gay defendant, Stephen Jonas, was charged with first-degree mur-

der in a case with sexual overtones. Among other claims, Jonas asserts the district court improperly failed to strike for cause a potential juror who expressed bias against gay people in a jury questionnaire and in response to questioning in voir dire as required by Iowa Rule of Criminal Procedure 2.18(5)(k). Because of the district court's refusal to disqualify the potential juror, Jonas exercised one of his peremptory strikes, granted by Iowa Rule of Criminal Procedure 2.18(9), to remove the potential juror from the jury. The case proceeded to a jury trial. Jonas was convicted of second-degree murder.

Jonas appealed. Jonas claims that because he was forced to use a peremptory strike to disqualify a potential juror who should have been disqualified for cause, reversal is required even though the challenged potential juror was not seated and there is no specific showing of prejudice in the case. Jonas recognizes our prior precedent, *State v. Neuendorf*, 509 N.W.2d 743, 747 (Iowa 1993), is contrary to his position and invites us to reconsider that precedent. Jonas also asserts that there was insufficient evidence to support the jury verdict and that his counsel was ineffective for failing to object to statements made by the prosecutor in closing arguments and failing to request a limiting instruction with respect to other statements made by the prosecution in closing arguments.

We transferred the case to the court of appeals. On the question of jury selection, the court of appeals, citing *Neuendorf*, rejected Jonas's challenge on the ground that even if the district court erred in refusing to dismiss the potential juror, the defendant failed to show prejudice. The court of appeals further rejected Jonas's challenge to the sufficiency of the evidence and his claims that counsel was ineffective for failing to object to closing argument and failing to seek a limiting instruction.

We granted further review. When we grant further review, we have discretion to limit the issues considered by this court. *State v. Pearson*, 804 N.W.2d 260, 265 (Iowa 2011). We allow the decision of the court of appeals to stand on the sufficiency-of-the-evidence and ineffective-assistance-of-counsel claims. We consider only the question of whether the verdict must be reversed under the circumstances because the district court failed to disqualify the potential juror for cause. For the reasons expressed below, we affirm.

## I. Factual and Procedural Background.

On August 23, 2014, Zachery Paulson was found dead in the lot of his father's business bordering the Clive Greenbelt Trail. Following an autopsy, it was determined Paulson died from multiple stab and incised wounds. The police investigation focused on Jonas. Jonas ultimately admitted to stabbing Paulson but asserted he did so in self-defense.

According to Jonas, about one week before Paulson's death, he and Paulson engaged in a mutual hug that led to kissing. Other witnesses described the encounter as unwanted and Paulson pushed Jonas away and asked him to leave. After the incident, Jonas continued to contact Paulson via text message throughout the next week. The text messages went unanswered.

Jonas claimed on the night of Paulson's death, he went to a local bar to confront Paulson about the incident. According to Jonas, he and Paulson left the bar for a parking lot where they engaged in small talk. Jonas maintained Paulson struck him with a hammer and a fight ensued. Jonas told the police he remembered stabbing Paulson only five times. Paulson was

moaning when Jonas left the scene, and Paulson eventually died from the wounds.

On September 30, 2014, Jonas was charged by trial information with murder in the first degree. Jonas filed a notice of defense of justification. The trial began on July 2, 2015.

A written questionnaire asked each potential juror the following question: "The defendant in this case is gay. Would this fact in any way influence your ability to be fair and impartial if you were selected to be a juror in this case?" A potential juror put an X next to "yes" and, in the place provided for an explanation, wrote "I would try to keep an open mind, but I would have a hard time overlooking it." During voir dire, Jonas's defense attorney asked the potential juror about the potential juror's affirmative answer to the question. The defense attorney asked, about Jonas's sexuality, "You agree that fact is going to affect your ability to be fair?" The potential juror replied, "Somewhere in the back of my mind something would come up. I just—I'm just being honest with you." The defense attorney pressed further, "So is it fair to say that you are not going to be able to give Mr. Jonas a fair trial because of that?" The potential juror answered,

I would say that young man would probably do better without me on the jury, just to be honest with you. I would try to be fair. I'm 50 years old and I would try to be fair, but he probably would have better jury selection than myself.

The defense attorney asked, "Because is that a factor you will not be able to exclude?" The potential juror said, "I don't know if I'd be able to. I would try to exclude it, but, you know, somewhere in the back something is going to come up I guess."

The prosecutor tried to get a different answer from the potential juror, asking if the juror could not make a decision based on the evidence. The potential juror responded, "Again, I would sit there and somewhere along the way something would come up in the back of my mind. I will try. Honestly I will try that, but the young man would probably do better with someone else." The prosecutor said, "I know you have personal feelings. Can you set those aside and made a decision based on [the evidence and the judge's instructions]?" The potential juror answered,

Again, I would try, but I'm sure there would be something that would come up. . . . I'm 50 years old. I work with truckers and guys in oil refineries and in oil wells. It's just permeated in my life. So I will try to be honest and fair, but again, there would be something that would come up. I'm just being honest.

The court then took over questioning of the potential juror:

THE COURT: When you say there is going to be something that comes up, what do you mean by that? A. You know, in the back of my mind, and I don't want to insult anybody here, I just would—I don't know. I would think I will try to be honest, but then again I would be like, oh, well. And I can't explain it exactly.

THE COURT: My question for us is this: Does the fact that the defendant, Mr. Jonas, has identified himself as a gay man, does that fact alone cause you to be biased or prejudice[d] against him in determining whether or not he's guilty or innocent in this case? A. Again, I don't think it would be determined whether he was guilty or innocent, but I would still have a bias there some place, yes.

THE COURT: Okay. So are you—if I instruct you as to what the law is, are

you going to be able to follow what the law says? A. Yes.

THE COURT: Are you—does the fact that the defendant, again, is gay, does that cause you to not be able to listen to the evidence and keep an open mind with respect to guilty or not guilty, the facts of this case? Do you understand that question? That was a little bit— A. I understand that, you know, again the facts are going to be the facts and my— and that's what we will hear and that's what we will determine. But, again, somewhere down in the—

THE COURT: Well, the law doesn't require that you forget the fact that Mr. Jonas is gay, so that's why I'm concerned about the fact that you are telling us that there is something that might pop up in the back of your head. You don't have to forget the fact that he has identified himself as being gay.

Is that what you are telling the Court is that you are not going to be able to forget the fact that he's gay. Or do you think that the fact that he's gay means that more likely than not that he—that you are not going to be able to give him a fair trial? A. I think, again, the gentleman would probably do better without me on the jury. I think there could be something in the back of my mind that would—again, I'd listen to the facts. I would try my best, but it's who we are.

The defense attorney then resumed questioning the potential juror, asking him if there will still be bias in the back of his mind. "I think there will be, yes, sir," the potential juror replied. The defense attorney asked the potential juror if a gay man making a sexual advance to another man would bother him. The potential juror said, "[I]t would bother me, yes."

After the potential juror left the room, Jonas's defense attorney moved to dismiss him for cause, stating, "[T]here is no ques-

tion that this juror cannot be fair and impartial to Mr. Jonas because he is gay." After hearing arguments from both sides regarding the potential juror, the court made the following ruling:

Well, my problem is he has said that he's going to have it in the back of his mind and that the defendant would be better off not having him as a juror. After he said that, he still continues to express the opinion that he could be fair and unbiased and be able to try a fair case.

And I just don't think that the record is there to strike him for cause at this point. So I'm going to allow [the juror] to stay on the panel.

The potential juror was allowed to stay on the panel until defense counsel used a peremptory strike to remove him. Jonas used all ten of his peremptory strikes.

The jury returned a verdict of guilty for murder in the second degree. Jonas appealed. The court of appeals affirmed. On the issue of jury selection, the court of appeals held Jonas could not show he was prejudiced by the denial of a for-cause strike for the potential juror because the potential juror did not serve on the jury and Jonas did not allege the remaining jury was biased as a result of his use of all of his peremptory challenges. *See Neuendorf*, 509 N.W.2d at 747. The court therefore declined to reach the issue of whether the district court erred in declining to strike the potential juror for cause.

Jonas applied for further review, which we granted.

## II. Standard of Review.

We review the district court's rulings on challenges to potential jurors for cause for abuse of discretion. *State v. Tillman*, 514 N.W.2d 105, 107 (Iowa 1994); *State v. Hardin*, 498 N.W.2d 677, 681

(Iowa 1993). The district court is vested with broad discretion in such rulings. *State v. Mitchell*, 573 N.W.2d 239, 240 (Iowa 1997); *Tillman*, 514 N.W.2d at 107.

### III. Discussion.

**A. Introduction.** This challenge related to the failure of the district court to disqualify the potential juror raises two state law issues under Iowa Rule of Criminal Procedure 2.18(5)(*k*) dealing with disqualifications for cause and rule 2.18(9) providing for peremptory challenges.[1] The first issue is whether the district court abused its discretion under rule 2.18(5)(*k*) in failing to discharge the potential juror for cause when the potential juror, in a case involving a gay defendant in a sexual context, expressed bias against gay people in a jury questionnaire and affirmatively told the court in voir dire he would follow the court's instructions, but further advised the court that bias would remain in the back of his mind. The second issue relates to the use of peremptory challenges under rule 2.18(9). The second issue posed in this case is a variant of the *Neuendorf* question, namely, whether under state law a defendant must show actual prejudice when the district court unlawfully fails to disqualify a potential juror, but the potential juror is not seated because the defendant removed the potential juror through exercise of a peremptory strike.

**B. Disqualification of Juror for Cause.** On the issue of disqualification of a juror for cause, there is authority for the proposition that when a potential juror at the outset of voir dire expresses bias or prejudice unequivocally, the potential juror

should be disqualified for cause notwithstanding later, generalized statements the potential juror could be fair. *See generally* 58 Am. Jur. Proof of Facts 3d *Challenges for Cause in Jury Selection Processes* § 23, at 434–36 (2000) (describing history and proper role of rehabilitation). According to this approach, once the genie of prejudice or bias is out of the bottle, it is a fool's errand to put it back in through persistent coaxing.

There is ample authority for this approach in the caselaw. For example, in *Morgan v. Illinois*, the United States Supreme Court stated when actual bias is stated, generalized affirmative response to questions like "[w]ould you follow my instructions on the law even though you may not agree" is insufficient to avoid disqualification of potential juror. 504 U.S. 719, 723–24, 733, 112 S.Ct. 2222, 2226–27, 2232, 119 L.Ed.2d 492 (1992). Other cases reach similar results. *See, e.g., Johnson v. Reynolds*, 97 Fla. 591, 121 So. 793, 796 (1929) (en banc) ("It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom free from its influence."); *Gosling v. Commonwealth*, 7 Va.App. 642, 376 S.E.2d 541, 544 (1989) (holding juror who expresses positive, unequivocal bias should be disqualified notwithstanding subsequent generalized statements regarding ability to be fair).

Under the actual-bias cases, a later affirmative response to a "magic question" using the words fair and impartial is not enough to rehabilitate the potential juror.

---

1. Rule 2.18(5)(*k*) provides, in relevant part, a challenge for cause may be made by the state or defendant if the juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." Iowa R. Crim. P. 2.18(5)(*k*). Rule 2.18(9) grants ten peremptory strikes to each party in cases involving Class "A" felonies. *Id.*

*See State v. Fletcher*, 353 P.3d 1273, 1281 (Utah Ct. App. 2015) ("[Bias] is generally not rebutted simply by a subsequent general statement by the juror that he or she can be fair and impartial...." (quoting *State v. Woolley*, 810 P.2d 440, 445 (Utah Ct. App. 1991))). If a potential juror expresses actual bias, "the law will not trust him" to be fair and impartial. *Dyer v. Calderon*, 151 F.3d 970, 984 (9th Cir. 1998) (quoting *United States v. Burr*, 25 F. Cas. 49, 50 (D. Va. 1807)). As noted in *People v. Merrow*, answers to the trial judge's generalized and leading questions "may suggest overt acquiescence in the trial court's efforts to elicit a commitment to neutrality" but are unreliable. 181 P.3d 319, 323 (Colo. App. 2007). Similarly, United States District Court Judge Mark W. Bennett has observed,

> As a [federal] district court judge for over fifteen years, I cannot help but notice that jurors are all too likely to give me the answers that they think I want, and they almost uniformly answer that they can "be fair."

Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010); *see also* Dov Fox, *Neuro-Voir Dire and the Architecture of Bias*, 65 Hastings L.J. 999, 1011 (2014) ("[S]imply asking jurors whether they can be impartial is not likely to reveal with any reliability the presence or strength of many of the outside influences that they would in fact bring to bear on the questions at trial."); Mary R. Rose & Shari Seidman Diamond, *Judging Bias: Juror Confidence and Judicial Rulings on Challenges for Cause*, 42 Law & Soc'y Rev. 513, 516 (2008) (expressing concerns about quality and reliability of juror claims of fairness from a law and social science perspective).

In a similar vein, courts have cautioned that judicial rehabilitation should not become a "stark little exercise," *State v. Saunders*, 992 P.2d 951, 962 (Utah 1999) (quoting *State v. Worthen*, 765 P.2d 839, 845 (Utah 1988)), because "determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism," *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). A Kentucky court has declared "[o]ne of the myths" of jury selection is that an answer to a "magic question" posed by the court results in juror rehabilitation sufficient to eliminate bias. *Montgomery v. Commonwealth*, 819 S.W.2d 713, 717 (Ky. 1991). A justice on the Supreme Court of Colorado has suggested judicial rehabilitation by "leading questions and thorough interrogation" designed to "give the answers desired by the state to qualify [the juror]" may amount to judicial advocacy. *See Leick v. People*, 136 Colo. 535, 322 P.2d 674, 693 (1958) (en banc) (Sutton, J., dissenting). A Mississippi court has observed when the trial court engages in questioning a juror,

> [c]are should be taken that the nuances imbedded in the judges' questions do not suggest that there is only one proper answer, and that questions are asked in a way that would not cause one, from fear or embarrassment, to give anything less than frank, honest answers.

*Bell v. State*, 725 So.2d 836, 845 (Miss. 1998).

Another cautionary factor that counsels against a "magic question" approach on judicial voir dire is the presence of implicit bias. *See Smith v. Phillips*, 455 U.S. 209, 221–22, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring) (cautioning that some circumstances may justify a finding of implied bias); *State v. Plain*, 898

N.W.2d 801, 830–36 (Iowa 2017) (Appel, J., concurring specially) (describing the theory of implicit bias and discussing the use of cautionary jury instructions as a remedy); *Pippen v. State*, 854 N.W.2d 1, 33 & n.9 (Iowa 2014) (Waterman, J., concurring specially) (detailing expert testimony on the theory of implicit bias). Because of the difficulty of identifying implicitly biased jurors, shortcut approaches to juror rehabilitation are problematic.

On the other hand, there is caselaw supporting the authority of judges to rehabilitate jurors. In *Thomas ex rel. Thomas v. Mercy Hospitals East Communities*, the Supreme Court of Missouri found no abuse of discretion when the court rehabilitated a juror who had expressed bias in favor of the hospital. 525 S.W.3d 114, 116, 121 (Mo. 2017) (en banc). Similarly, in *People v. Griffin*, a Colorado appellate court found no abuse of discretion where the trial court was reasonably satisfied "the prospective juror [was] willing and able to be fair and to follow its instructions." 985 P.2d 15, 20 (Colo. App. 1998).

We have scoured the cases to learn how courts have treated juror rehabilitation in cases in which potential jurors expressed bias related to gay people in cases with sexual context. In *People v. McGuire*, a defendant was charged with sexual abuse of a minor child. 101 A.D.3d 1386, 956 N.Y.S.2d 635, 636 (2012). A potential juror gave answers indicating he would not want his child taught by a gay teacher. *Id.* at 637. Neither the state nor the court obtained unequivocal assurances of impartiality from the potential juror. *Id.* The New York appellate court held the district court erred in not striking the potential juror for cause. *Id.* A similar result was avoided in *State v. Salmons*, when the district court carefully examined the potential juror and disqualified the juror for cause based on

expressed bias toward gay people. 203 W.Va. 561, 509 S.E.2d 842, 862 (1998).

Some cases seem to turn on unequivocal statements by potential jurors to solely consider the evidence, statements from which they do not waiver. For example, in *State v. Marble*, a potential juror expressed strong religious conviction against homosexuality. 328 Mont. 223, 119 P.3d 88, 89 (2005). The potential juror repeatedly and unequivocally stated, however, he could fairly judge the case. *Id.* at 90. The trial court denied a defense motion to strike the potential juror for cause, and the defendant exercised a peremptory challenge. *Id.* The Montana Supreme Court found no abuse of discretion on the facts presented, finding no actual bias was present and emphasizing the potential juror never expressed reluctance or inability to follow the law or apply it as instructed. *Id.* at 91. Similarly, in *People v. Hoskay*, the district court denied a challenge for cause to a potential juror who had religious objections to homosexuality where the juror made clear she would "judge solely on the evidence that's presented" and "would never send someone [to prison]" based on her feelings about certain subjects. 87 P.3d 194, 196 (Colo. App. 2003); *see generally* Giovanna Shay, *In the Box: Voir Dire on LGBT Issues in Changing Times*, 37 Harv. J.L. & Gender 407, 427–34 (2014) (describing the practice of some courts to deny for-cause challenges to jurors who express strong anti-gay attitudes but agree they can be fair).

Yet, in *T.K.'s Video, Inc. v. State*, a potential juror indicated homosexuality was "shameful, morbid and sick." 871 S.W.2d 527, 528 (Tex. App. 1994). At the end of voir dire, the potential jury member declared, "I think it's something I would struggle with. I think that I could be objective enough, though, to the best of my abilities to carry out the Judge's instruc-

tions." *Id.* Although the district court characterized the question as a close one, the court refused to disqualify the juror for cause. *Id.* The Texas appellate court affirmed, agreeing it was a close case but no abuse of discretion was present. *Id.* at 529.

Turning to Iowa cases, we find no case close to the present facts and none dealing with claimed bias against homosexuals. Further, our caselaw on juror disqualification and judicial rehabilitation is sparse. It is undisputed, however, that our traditional standard of review for district court rulings on the qualifications of jurors is for abuse of discretion. *Tillman,* 514 N.W.2d at 107. We recently noted district court judges are required to make rulings on juror disqualification on the spot and in real time. *State v. Mootz,* 808 N.W.2d 207, 225 (Iowa 2012) ("Voir dire is a very short window of time for attorneys and the court to determine whether a juror will be unbiased and impartial."). We have stated, however, trial court discretion is not unlimited in allowing or disallowing challenges for cause in criminal cases. *State v. Beckwith,* 242 Iowa 228, 232, 46 N.W.2d 20, 23 (1951), *overruled on other grounds by Neuendorf,* 509 N.W.2d at 746. A number of cases illustrate our approach to the issue of juror disqualification.

In *State v. Winfrey,* we held a district court did not abuse its discretion in refusing to disqualify for cause a potential juror who indicated he and his wife had experienced trouble in the past with two young African-Americans and had moved out of a predominantly African-American neighborhood. 221 N.W.2d 269, 273 (Iowa 1974). In *Winfrey,* the potential juror "stated he could be fair and impartial to [the] defendant." *Id.* The potential juror never expressly stated he was prejudiced toward African-Americans, however, and there was no indication that the juror waivered from his statement he could be fair and

impartial upon further examination by defense counsel. *See id.*

Another case of interest is *Hardin.* In that case, Hardin was charged with disrupting a speech by President George H.W. Bush with anti-war chants. 498 N.W.2d at 678. The potential juror in question was wearing a "Desert Storm" t-shirt which suggested support for the President's Persian Gulf policy. *Id.* at 679. The potential juror declared despite his support for the war, he could be impartial with respect to the defendant. *Id.* at 682. Notably, the court, in declining to find an abuse of discretion by the district court, observed "[n]o waiver from that position was elicited by Hardin's counsel." *Id.* But here, the potential juror at no time declared unequivocally he could be fair to the defendant and appeared to restate his bias on further examination by defense counsel.

In at least two cases, we have found district courts abused their discretion in failing to disqualify potential jurors. In *State v. Kuster,* the potential juror was the sister of a person whose home was the target of a shooting in the case at issue. 353 N.W.2d 428, 433 (Iowa 1984), *overruled on other grounds in State v. Huisman,* 544 N.W.2d 433, 440–41 (Iowa 1996). The sister declared she could follow the court's instructions, but she would probably be partial based not on her familial relationship but because of her knowledge of the defendant. *Id.* This case, however, involves no close relationship between the potential juror and the person alleged to be injured by the offense.

A second case where we found an abuse of discretion when a district court declined to disqualify a juror for cause is *Neuendorf.* In *Neuendorf,* a juror had been exposed to pretrial publicity and knew Neuendorf's codefendant had been found guilty. 509 N.W.2d at 745. The potential juror stated it would be difficult for her to

be fair in the case and when asked whether she would make every reasonable effort to judge Neuendorf on what he did or did not do, the juror's response was "I will try." *Id.* We agreed with the assessment of the court of appeals, which ruled the district court abused its discretion as nowhere had the potential juror indicated her prior opinion would not ultimately influence her view of the case. *Id.* at 746.

While we have generally reviewed disqualification of jurors deferentially, we have long cautioned trial courts against allowing close issues to creep into the record and threaten the validity of a criminal trial. In *State v. Teale*, we stated,

[W]e see no occasion in the ordinary administration of the criminal law in this state for the close rulings on the qualifications of jurors that are constantly brought to our attention. Although a ruling may be technically right, if it must be so doubtful as to raise a fair question as to its correctness, it is far better to give the accused the benefit of the doubt, to the end that he and all other men may be satisfied that his rights have not been invaded.

154 Iowa 677, 682, 135 N.W. 408, 410 (1912).

We cited the above language with approval in *Beckwith*, 242 Iowa at 238–39, 46 N.W.2d at 26. In *Beckwith*, we further added that with the high level of literacy and intelligence existing among the citizens of Iowa, "it should not be necessary for trial courts to skirt the brink of error in the selection of trial jurors." *Id.* at 239, 46 N.W.2d at 26. We repeated the admonition in *State v. Williams*, 285 N.W.2d 248, 267 (Iowa 1979). We again endorse it today.

Based on our review of the record and relevant authorities, we conclude that the district court abused its discretion in refusing to disqualify the potential juror

for cause. We rely primarily on the potential juror's expression of actual bias against gay people in the original questionnaire and during voir dire. *See Morgan*, 504 U.S. at 723–24, 739, 112 S.Ct. at 2226–27, 2235 (holding that a jury which was not questioned about their willingness to impose a sentence other than death had inadequate voir dire despite every juror agreeing to be fair and impartial); *Dyer*, 151 F.3d at 984 (noting when an individual is prejudiced in a case, bias is presumed despite assertions to the contrary); *Fletcher*, 353 P.3d at 1281 (holding an inference of bias may not be rebutted by subsequent assurances of fairness); *Gosling*, 376 S.E.2d at 544 ("A juror's subsequent statement that he can give the defendant a fair and impartial trial ... is not dispositive when preceded by positive, unequivocal testimony."). Where a potential juror initially repeatedly expresses actual bias against the defendant based on race, ethnicity, sex, or sexual orientation, both in a pretrial questionnaire and in voir dire, we do not believe the district court can rehabilitate the potential juror through persistent questioning regarding whether the juror would follow instructions from the court. *See Merrow*, 181 P.3d at 323 (Webb, J., specially concurring) ("[A] record laden with leading questions by the trial court can leave a reviewing court uncertain about the sincerity of the prospective juror's answers."). Our conclusion in this case is reinforced by the fact that even after the extensive colloquy with the court, the potential juror still continued to express his own concerns about his potential bias and ability to be fair and impartial. Under these circumstances, when the defendant moved to disqualify the potential juror for cause after the conclusion of the colloquy, the district court erred in refusing to disqualify him. We now turn to the question of prejudice.

### C. Prejudice.

1. *Traditional Iowa state law approach.* For many years, our caselaw in Iowa provided that error in denying a challenge to a potential juror for cause was presumed to be prejudicial under state law. In *State v. Reed,* we considered a case where a potential juror had preconceived views of the defendant's guilt. 201 Iowa 1352, 1353, 208 N.W. 308, 309 (1926), *overruled by Neuendorf,* 509 N.W.2d at 746. Reed challenged the potential juror for cause under the then-applicable state statute regarding juror qualifications, but the trial court declined to excuse the juror. *Id.* Reed then exercised a peremptory challenge disqualifying the potential juror. *Id.* Reed proceeded to exhaust his peremptory challenges. *Id.* at 1354, 208 N.W. at 309. A jury subsequently convicted Reed, and he appealed. *See id.* at 1355, 208 N.W. at 309.

On appeal, Reed claimed he was entitled to a new trial because of the failure of the trial court to disqualify the potential juror. *Id.* at 1354, 208 N.W. at 309. We agreed. *Id.* The *Reed* court rejected the argument that the error was cured when *Reed* exercised a peremptory challenge to remove the potential juror. *Id.* According to the *Reed* court,

> The court has no right to deprive the defendant of the full number of statutory peremptory challenges given him by overruling challenges for cause and thus requiring a defendant to use his peremptory challenges against jurors to whom the challenge for cause should have been sustained.

*Id.* at 1353–54, 208 N.W. at 309. We emphasized the applicable Iowa statute on juror disqualification did not permit a defendant to be placed in any such situation. *Id.* at 1354, 208 N.W. at 309.

Notably, Justice Stevens dissented in *Reed. Id.* at 1355, 208 N.W. at 309 (Stevens, J., dissenting). He observed that it was not claimed any of the jurors who sat on the jury were incompetent or that Reed did not receive a fair trial because of the error. *Id.* at 1355, 208 N.W. at 310. According to Justice Stevens, there was no basis to presume prejudice under the facts of the case. *Id.*

We revisited the issue twenty-five years later in *Beckwith.* In *Beckwith,* the defendant, again citing the applicable Iowa statute related to juror disqualification, argued the district court erred in refusing to grant defendant's challenge for cause with respect to two potential jurors who expressed possible difficulty in giving the defendant a fair trial. 242 Iowa at 232–35, 46 N.W.2d at 22–24. Citing *Reed,* we stated in *Beckwith* "it is settled law" that if a defendant exercises a peremptory challenge to remove from the jury a juror who should have been disqualified for cause, prejudice will be presumed. *Id.* at 232, 46 N.W.2d at 23.

2. *Evolving approach of the United States Supreme Court under federal law.* Over the years, the United States Supreme Court has considered on a number of occasions whether a defendant has rights under the United States Constitution that are implicated by state-provided rights to peremptory challenges. In *Swain v. Alabama,* the Court considered the exercise of peremptory challenges to remove African-Americans from the jury. 380 U.S. 202, 209, 85 S.Ct. 824, 830, 13 L.Ed.2d 759 (1965), *overruled by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In discussing the role of peremptory challenges, the Court in *Swain* recognized the "very old credentials" of peremptory challenges at common law. *Id.* at 212, 85 S.Ct. at 831. The *Swain* Court further cited prior precedent to the effect that, although there is nothing in the United States Constitution requiring Congress or the states to grant peremptory challenges,

nonetheless such a challenge is "one of the most important of the rights secured to the accused." *Id.* at 219, 85 S.Ct. at 835 (quoting *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894)); *see also Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919) (noting there is nothing in the United States Constitution requiring Congress to grant peremptory challenges to defendants in federal cases). The Court stressed

> [t]he function of the challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise.

*Swain*, 380 U.S. at 219, 85 S.Ct. at 835. The Court concluded the trial court could not enquire into the reasons for exercising peremptory challenges, even if they appeared to be based on race. *Id.* at 222, 85 S.Ct. at 837. Although *Swain* was subsequently reversed in *Batson*, 476 U.S. 79, 106 S.Ct. 1712, the Court's dicta regarding the history and important role of peremptory challenges were not expressly disavowed.

In *Davis v. Georgia*, 429 U.S. 122, 122, 97 S.Ct. 399, 399, 50 L.Ed.2d 339 (1976) (per curiam), the Supreme Court considered a case where potential jurors were excluded from the jury panel because they expressed general objections to the death penalty in violation of the federal due process principles announced in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In a per curiam opinion, the *Davis* Court did not analyze the fairness of the jury that actually sat on the case, but instead required automatic reversal when a veniremember was improperly disqualified under *Witherspoon. Davis*, 429 U.S. at 123, 97 S.Ct. at 400.

The Supreme Court next considered whether an improper granting of a motion to strike offended the Sixth and Fourteenth Amendments of the United States Constitution in *Gray v. Mississippi*, 481 U.S. 648, 657, 107 S.Ct. 2045, 2051, 95 L.Ed.2d 622 (1987). In *Gray*, the trial court granted a motion to strike a potential juror who expressed reservations about the death penalty. *Id.* at 653–55, 107 S.Ct. at 2049–50. The majority of the splintered *Gray* Court found the striking of the juror was constitutionally infirm under *Witherspoon. Id.* at 668, 107 S.Ct. at 2057. The *Gray* Court emphasized the question on the issue of prejudice was "whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error." *Id.* at 665, 107 S.Ct. at 2055 (quoting *Moore v. Estelle*, 670 F.2d 56, 58 (5th Cir. 1982) (Goldberg, J., specially concurring)). The focus on the impact on the composition of the jury in *Gray* when applying the Sixth and Fourteenth Amendments of the United States Constitution was consistent with our approach to state statutory provisions regarding juror disqualification in *Beckwith*, 242 Iowa at 239, 46 N.W.2d at 26, and *Reed*, 201 Iowa at 1354, 208 N.W. at 309.

The United States Supreme Court, however, employed different reasoning only a year later in *Ross v. Oklahoma*, 487 U.S. 81, 86, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988). In *Ross*, the defendant alleged Sixth and Fourteenth Amendment violations arising from what he asserted was the trial court's improper refusal to disqualify a potential juror for cause. *Id.* at 83, 108 S.Ct. at 2275. Because the trial court refused to disqualify the potential juror, the defendant was required by the Oklahoma rule to use peremptory challenges he would not have been required to exercise had the district court properly disqualified the juror. *Id.* at 90–91 & n.4,

108 S.Ct. at 2279–80 & n.4. The procedural context was thus somewhat different than in *Gray*, 481 U.S. at 655, 107 S.Ct. at 2050, where the defendant challenged the improper *exclusion* of a juror in violation of *Witherspoon*, 391 U.S. 510, 88 S.Ct. 1770. In *Ross*, the defendant challenged the improper failure to exclude an unqualified juror from the jury panel, thereby causing the defendant to unnecessarily expend one of his state law peremptory strikes. 487 U.S. at 83, 108 S.Ct. at 2275.

Unlike in *Gray*, the *Ross* majority determined the focus of the inquiry on the question of prejudice was not on the nature of the jury panel, but was on whether the jury that was actually seated was impartial. *Id.* at 90, 108 S.Ct. at 2279. Four members of the *Ross* Court dissented, arguing the approach in *Gray*, which focused on the nature of the jury panel, should control. *Id.* at 91–92, 108 S.Ct. at 2280 (Marshall, J., dissenting).

There was, however, an intriguing footnote in *Ross*. In footnote 4, the *Ross* majority stated it was not deciding, in the absence of Oklahoma's limitation on the "right" to exercise peremptory challenges, whether "a denial or impairment" of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been excused for cause. *Id.* at 91 n.4, 108 S.Ct. at 2280 n.4 (majority opinion).

3. *Impact of federal law on state law: reversal of course in* Neuendorf. The claims in *Ross* were brought solely under the Sixth (impartial jury) and Fourteenth (due process) Amendments to the United States Constitution. *Id.* at 83, 108 S.Ct. at 2275. Further, the *Ross* Court expressly limited its holding to the Oklahoma context in which a defendant was, as a matter of state law, required to use peremptory strikes if a trial court erroneously refused to disqualify a juror for cause. *Id.* at 90–91 & n.4, 108 S.Ct. at 2279–80 & n.4. Nonetheless, shortly after the Supreme Court reversed its analytical course in *Ross*, we revisited the state law issue of whether prejudice must be shown when a district court fails to disqualify a juror in *Neuendorf*.

The defendant in *Neuendorf* asserted the trial court should have disqualified a potential juror for cause and, as a result, reversal of his conviction was required under Iowa statutes and rules governing jury selection and peremptory strikes. 509 N.W.2d at 744. In considering the state law claim raised in *Neuendorf*, we emphasized the United States Supreme Court had held in *Ross* that the *Beckwith* automatic reversal rule was not required under the Sixth and Fourteenth Amendments to the Federal Constitution. *Id.* at 746–47. The *Neuendorf* court made no mention of the limitation of *Ross* contained in footnote 4, indicating the decision was limited to the unique provisions of Oklahoma law. *See Ross*, 487 U.S. at 91 n.4, 108 S.Ct. at 2280 n.4. We asserted that since *Ross*, nineteen jurisdictions had "refused to apply an automatic reversal rule of the type that we previously recognized in *Beckwith*." *Neuendorf*, 509 N.W.2d at 747.[2] We con-

---

**2.** The string cite of cases in *Neuendorf*, 509 N.W.2d at 747, from these nineteen jurisdictions present a variety of cases said to have followed *Ross*, 487 U.S. 81, 108 S.Ct. 2273. Of the cases cited, only two clearly followed *Ross* in making an interpretation of state law. In *State v. Middlebrooks*, the Tennessee court cited *Ross* in deciding a challenge to the jury under both the Sixth Amendment and article

I, section 9 of the Tennessee Constitution. 840 S.W.2d 317, 329 (Tenn. 1992). No independent state law discussion was offered. *See id.* In *State v. Traylor*, the Wisconsin court cited *Ross* favorably, but noted that the same result occurred under preexisting Wisconsin law. 170 Wis.2d 393, 489 N.W.2d 626, 628–29 (Wis. Ct. App. 1992).

cluded the existence of prejudice was "too speculative to justify overturning the verdict of the jury" where the juror who should have been stricken for cause was removed from the jury through exercise of a peremptory challenge by the defendant.

At least five of the cases cited in *Neuendorf* were simply following *Ross* as required by the Supremacy Clause expressly with respect to Sixth and Fourteenth Amendment claims, provide no resolution of state law claims, and thus do not represent an independent decision to adopt *Ross* in the application of state law. *See People v. Pride*, 3 Cal.4th 195, 10 Cal.Rptr.2d 636, 833 P.2d 643, 656 (1992) (involving a claim for additional peremptory challenges as a matter of right under United States Constitution); *Dawson v. State*, 581 A.2d 1078, 1093–94 (Del. 1990) (discussing Sixth and Fourteenth Amendment challenges to jury selection), *rev'd on other grounds*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992); *Vaughn v. State*, 559 N.E.2d 610, 614 (Ind. 1990) (considering claim brought under Sixth and Fourteenth Amendments); *State v. Tranby*, 437 N.W.2d 817, 824–25 (N.D. 1989) (involving a claim brought under Sixth Amendment); *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682, 694–95 (1988) (discussing claim brought under Sixth and Fourteenth Amendments).

In another nine of the cases cited in *Neuendorf*, the cases include no discussion of any kind on the question of whether *Ross* should be adopted under state law. *See Pickens v. State*, 301 Ark. 244, 783 S.W.2d 341, 345 (1990) (speaking generally of the right to an impartial jury and citing *Ross*); *State v. Graham*, 70 Haw. 627, 780 P.2d 1103, 1108 n.3 (1989) (having a citation to *Ross*, no mention of challenge based on state law); *State v. Ramos*, 119 Idaho 568, 808 P.2d 1313, 1315 (1991) (same); *People v. Harris*, 231 Ill.App.3d 876, 173 Ill.Dec. 484, 596 N.E.2d 1363, 1365 (1992) (same); *State v. Mayberry*, 248 Kan. 369, 807 P.2d 86, 98 (1991) (same); *Hunt v. State*, 321 Md. 387, 583 A.2d 218, 233–34 (1990) (same); *Mettetal v. State*, 602 So.2d 864, 869 (Miss. 1992) (same); *Commonwealth v. Ingram*, 404 Pa.Super. 560, 591 A.2d 734, 738–39 & n.4 (1991) (same); *State v. Green*, 301 S.C. 347, 392 S.E.2d 157, 160 (1990) (same). It is not clear in these cases whether federal and state law claims were simply conflated or whether any state law claims were even raised. These cases do not involve a considered evaluation of the potential alternative approaches to prejudice under state law.

Some cases cited in *Neuendorf* did not, in fact, follow *Ross* but had their own permutations. In *Trotter v. State*, the Florida court concluded that when a district court erroneously refused to disqualify a juror, the defendant exhausted available challenges, and the defendant proposed that an additional juror be stricken, the automatic prejudice rule still applied, 576 So.2d 691, 693 (Fla. 1990). In *State v. Williams*, the New Jersey Supreme Court, after recognizing *Ross* under the Federal Constitution, expressly did not decide whether loss of a peremptory challenge in a case where all peremptories were exhausted would, in itself, require reversal under state law, and disposed of the case on other grounds, 113 N.J. 393, 550 A.2d 1172, 1199–200 (1988). One of the cited cases dealt with the question of what happens when a trial court erroneously strikes a juror for cause that should have been allowed to remain on the jury, presenting an issue different from that presented in *Ross* but similar to that presented in *Mootz*, 808 N.W.2d 207. *See Hunt*, 583 A.2d at 233–34. Another case involves a fact pattern where the defendant did not exhaust peremptory strikes and, as a result, had no cause to complain about using a peremptory strike to disqualify a juror who should have been disqualified for cause. *Williams v. Commonwealth*, 829 S.W.2d 942, 943 (Ky.App. 1992).

The *Neuendorf* string-cite also fails to mention contrary cases that came to a different conclusion under state law. *See, e.g., State v. Sexton*, 163 Ariz. 301, 787 P.2d 1097, 1099 (Ariz. Ct. App. 1989) (adhering to traditional state rule of automatic prejudice); *State v. Wacaser*, 794 S.W.2d 190, 193 (Mo. 1990) (en banc) (rejecting *Ross* rule). What is clear is that the cases cited in *Neuendorf* do not represent a substantial trend of state courts adopting *Ross* because of independent state law analysis. In any event, as we stated in *State v. Halstead*, the persuasiveness of authority is not based upon mere numbers, but the quality of analysis. 791 N.W.2d 805, 811 (Iowa 2010).

*Id.* at 746–47. We thus followed the prejudice approach under the United States Constitution adopted by *Ross*, 487 U.S. 81, 108 S.Ct. 2273, rejected by a narrow majority only a year earlier in *Gray*, 481 U.S. 648, 107 S.Ct. 2045, in applying the law of

jury disqualification under state statutes. *See Neuendorf*, 509 N.W.2d at 747.

4. *Subsequent United States Supreme Court cases regarding juror disqualification under federal law.* Subsequent to *Neuendorf*, the United States Supreme Court in *United States v. Martinez-Salazar* considered a case in which a defendant argued a trial court's failure to disqualify jurors for cause violated his right under Federal Rule of Criminal Procedure 24(b) and his due process rights under the United States Constitution. 528 U.S. 304, 309, 120 S.Ct. 774, 778, 145 L.Ed.2d 792 (2000). In this case, the United States Supreme Court addressed the situation left open by footnote 4 in *Ross*, 487 U.S. at 91 n.4, 108 S.Ct. at 2280 n.4.

The *Martinez-Salazar* Court repeated the Court's prior statements that "peremptory challenges are not of federal constitutional dimension." 528 U.S. at 311, 120 S.Ct. at 779. The *Martinez-Salazar* Court reemphasized the use of a peremptory challenge by the defendant was in line with its purpose, namely, "to help secure the constitutional guarantee of trial by an impartial jury." *Id.* at 316, 120 S.Ct. at 782. The Court observed challenges for cause and rulings on them "are fast paced, made on the spot and under pressure." *Id.* While the Court recognized that reversal is required if a juror should have been stricken is actually seated on the jury, automatic reversal is not required under Federal Rule of Criminal Procedure 24(b) or by due process when the juror is not seated as a result of the exercise of a peremptory challenge. *Id.* at 317, 120 S.Ct. at 782.

There was, however, an intriguing suggestion in a concurring opinion by Justice Souter. *Id.* at 317, 120 S.Ct. at 783 (Souter, J., concurring). He noted the majority opinion did not address the question of

> whether it is reversible error to refuse to afford a defendant a peremptory challenge beyond the maximum otherwise allowed, when he has used a peremptory challenge to cure an erroneous denial of a challenge for cause and when he shows that he would otherwise use his full complement of peremptory challenges for the noncurative purposes that are the focus of the peremptory right.

*Id.* at 317–18, 120 S.Ct. at 783. As with the majority opinion, of course, the Souter opinion was addressed solely to questions of federal law.

The United States Supreme Court again considered federal law claims arising from alleged infringement on peremptory challenges in *Rivera v. Illinois*, 556 U.S. 148, 151, 129 S.Ct. 1446, 1450, 173 L.Ed.2d 320 (2009). In *Rivera*, the Supreme Court stated erroneous denial of a defense peremptory challenge did not require automatic reversal under the Due Process Clause of the United States Constitution. *Id.* at 162, 129 S.Ct. at 1456. The *Rivera* Court emphasized that "[b]ecause peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id.* at 158, 129 S.Ct. at 1454. The Court stressed "[s]tates are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se*." *Id.* at 162, 129 S.Ct. at 1456.

■ 5. *State court responses to* Ross-Martinez-Salazar-Rivera *line of cases under state law.* After *Ross, Martinez-Salazar*, and *Rivera*, state courts considering challenges to jury disqualification under the Sixth and Fourteenth Amendments were, of course, required to follow the United States Supreme Court precedent. As the Court has repeatedly emphasized, state courts are not required to follow these cases in the interpretation of state

constitutions, state statutes, or local rules of criminal procedure. *See Rivera*, 556 U.S. at 161–62, 129 S.Ct. at 1456 ("States are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se*."); *see also Florida v. Powell*, 559 U.S. 50, 57, 130 S.Ct. 1195, 1202, 175 L.Ed.2d 1009 (2010) ("It is fundamental . . . that state courts be left free and unfettered by us in interpreting their state constitutions." (quoting *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557, 60 S.Ct. 676, 679, 84 L.Ed. 920 (1940))).

Although not required to do so, some states have elected to follow the *Ross-Martinez-Salazar-Rivera* line of cases in their interpretation of state law. After *Martinez-Salazar*, the South Dakota Supreme Court declared there was no principled basis for interpreting a court rule governing peremptory challenges more broadly than a federal constitutional right. *State v. Verhoef*, 627 N.W.2d 437, 441–42 (S.D. 2001) (per curiam). Arizona and Colorado also reversed prior state law precedent and followed the United States Supreme Court cases in the interpretation of state jury statutes and rules. *State v. Hickman*, 205 Ariz. 192, 68 P.3d 418, 422–24 (Ariz. 2003); *People v. Novotny*, 320 P.3d 1194, 1203 (Colo. 2014). So did Wisconsin, over a dissent that criticized the majority's reliance on federal constitutional law in interpreting state law regarding juries. *State v. Lindell*, 245 Wis.2d 689, 629 N.W.2d 223, 252 (Wis. 2001); *id.* at 260 (Abrahamson, C.J., dissenting).

A number of states, however, have declined to follow the *Ross-Martinez-Salazar-Rivera* line and have followed an approach to state law interpretation more consistent with *Gray*, 481 U.S. 648, 107 S.Ct. 2045. For example, in *Fortson v. State*, the Supreme Court of Georgia, favorably citing prior Georgia precedent,

held peremptory strikes are invaluable and prejudice occurs when defendant uses a peremptory strike on a juror who should have been disqualified. 277 Ga. 164, 587 S.E.2d 39, 42 (2003). In *Hunter v. State*, an Alabama appellate court explicitly noted the ruling in *Ross* was contrary to the prior rulings of the Supreme Court of Alabama. 585 So.2d 220, 222 n.1 (Ala. Crim. App. 1991). In *Commonwealth v. Auguste*, the Massachusetts Supreme Court held a wasted peremptory challenge correcting a judge's error should result in automatic reversal under Massachusetts law. 414 Mass. 51, 605 N.E.2d 819, 823 (1992). After some struggle and a series of contradictory opinions, the Supreme Court of Kentucky eventually declined to adopt *Ross* and has held a district court's erroneous refusal to disqualify a potential juror was reversible error when the defendant had exhausted peremptory challenges. *Shane v. Commonwealth*, 243 S.W.3d 336, 341 (Ky. 2007).

There is a third approach to the problem of harmless error when a district court erroneously fails to disqualify a potential juror. For example, Texas has long adhered to the view that harm may be shown if the district court erred in excluding a potential juror, the defense exhausts all peremptory challenges, and the defense identifies a seated juror upon whom the defense would have exercised a peremptory challenge. *See Johnson v. State*, 43 S.W.3d 1, 5–7 (Tex. Crim. App. 2001) (en banc); *Drummond v. State*, 624 S.W.2d 690, 693 (Tex. Ct. App. 1981).

Florida has a similar rule. In *Trotter v. State*, the Supreme Court of Florida, citing prior precedent, emphasized that to show reversible error arising from an erroneous refusal of the trial court to disqualify a potential juror for cause, a defendant must show "all peremptories had been exhausted and that an objectionable juror had

[been] accepted." 576 So.2d 691, 693 (Fla. 1990) (quoting *Pentecost v. State*, 545 So.2d 861, 863 n.1 (Fla. 1989)). The court emphasized that a defendant "cannot stand by silently while an objectionable juror is seated and then, if the verdict is adverse, obtain a new trial." *Id.* When the defendant shows a juror should have been stricken for cause, exhausts his peremptory challenges, and then identifies another juror he wishes to strike, reversal will be required if the trial court denies relief. *Busby v. State*, 894 So.2d 88, 96–97 (Fla. 2004) (per curiam).

6. Mootz *and the revival of peremptory challenges and per se prejudice.* We recently considered a question regarding juror selection in *Mootz*, 808 N.W.2d 207. In this reverse-*Batson* case, the defendant moved to exercise a peremptory strike on a juror. *Id.* at 212. The district court, however, found the defendant was using his strikes in a racially discriminatory manner, refused to honor the peremptory strike, and seated the juror. *Id.* at 213. The court of appeals majority, citing *Neuendorf* and *Rivera*, held Mootz was not entitled to reversal because he failed to show the trial court's error resulted in prejudice. *Id.* at 214.

On further review, we concluded Mootz had legitimate reasons for striking the juror and the district court erred in refusing to allow him to use a peremptory strike to exclude the juror. *Id.* at 220. We stated the issue before us in the case was what remedy to provide when a defendant is wrongfully prohibited from using a peremptory strike on a particular juror and the juror is ultimately seated. *Id.* at 221.

In considering the issue, we distinguished our prior cases, noting that in *Mootz* the court allowed a juror to sit on a jury when the defendant properly objected. *Id.* at 222. We emphasized that in *Mootz*, the jury included "a juror that

Mootz found objectionable and who he had every right to remove from the jury." *Id.* at 224. We noted that without presuming prejudice we could not conceive of any situation in which a defendant might show prejudice arising out of the wrongful denial of a peremptory challenge when the juror was not removable by a challenge for cause. *Id.* at 225. We noted *Rivera* expressly left to the states to decide "whether the 'mistaken denial of a peremptory challenge is reversible error *per se*'" under state law. *Id.* at 225 (quoting *Rivera*, 556 U.S. at 162, 129 S.Ct. at 1456). We declared under Iowa law that when a defendant attempts "to use a peremptory challenge, and that objection is wrongly overruled, we will presume the error is prejudicial." *Id.*

Justice Wiggins concurred. *Id.* at 226 (Wiggins, J., concurring specially). He noted, however, the reasoning of the *Mootz* majority logically extended to situations in which a potential juror should have been disqualified for cause but the defendant was forced to use a peremptory strike. *Id.* According to Justice Wiggins, a defendant forced to use a peremptory strike when a potential juror should have been disqualified for cause is in the same position as a defendant who sought to exercise a peremptory strike on a potential juror which the court wrongly denied. *Id.*

Thus, in *Mootz*, unlike in *Neuendorf*, we declined to adopt the minimum floor of constitutional protections provided by the United States Constitution to dictate our interpretation of state law. *Mootz* emphasizes the fundamental role that peremptory challenge has played in the jury selection process. 808 N.W.2d at 224 (majority opinion). We recognized the tradition of peremptory challenges was venerable at the time of Blackstone, reflected in a federal statute enacted by the same Congress that proposed the Bill of Rights, and was

recognized by Justice Story to be part of the common law. *Id.* While we recognized that *Rivera* did not require an automatic reversal process to meet minimum due process requirements under the Federal Constitution, we adopted an automatic reversal rule in interpreting rule 2.18(9). *Id.* at 225. Our approach in *Mootz*, in declining to transplant the minimum due process approach of the United States Supreme Court in *Rivera* onto our interpretation of state law, is consistent with the approach of a number of cases from other states. *See, e.g., Pellegrino v. AMPCO Sys. Parking*, 486 Mich. 330, 785 N.W.2d 45, 56–57 (2010); *Angus v. State*, 695 N.W.2d 109, 118 (Minn. 2005); *Hardison v. State*, 94 So.3d 1092, 1101 (Miss. 2012); *People v. Hecker*, 15 N.Y.3d 625, 917 N.Y.S.2d 39, 942 N.E.2d 248, 271–72 (2010); *State v. Yai Bol*, 190 Vt. 313, 29 A.3d 1249, 1256 (2011); *State v. Vreen*, 143 Wash.2d 923, 26 P.3d 236, 240 (2001) (en banc).

■ 7. *Discussion.* The question of prejudice in cases involving improper denial of challenges to potential jurors for cause has obviously confounded the courts for some time. Upon reviewing the multiple options under the caselaw and our recent holding in *Mootz*, we conclude the best option is to adopt the theory of prejudice outlined by the courts of Texas and Florida and at least suggested in Justice Souter's concurrence in *Martinez-Salazar*. Specifically, in order to show prejudice when the district court improperly refuses to disqualify a potential juror under Iowa Rule of Criminal Procedure 2.18(5)(*k*) and thereby causes a defendant to expend a peremptory challenge under rule 2.18(9), the defendant must specifically ask the court for an additional strike of a particular juror after his peremptory challenges have been exhausted.[3] Where the defendant makes such a showing, prejudice will then be presumed.

This three-pronged approach discourages a defendant who is satisfied with a jury notwithstanding judicial error in failing to strike a potential juror for cause from engaging in a sandbagging approach of awaiting the results of a jury verdict before crying foul. *See Trotter*, 576 So.2d at 693. It also tends to avoid another sandbagging scenario where the defense leaves an unqualified juror on the panel, awaits the verdict, and then appeals. The three-pronged approach further protects the defendant's substantial right to exercise the number of strikes provided him by our rules of criminal procedure. *See* Iowa R. Crim. P. 2.18(9). In addition, it avoids downgrading the importance of disqualification for cause that might result if no practical remedy is afforded. Finally, it also gives the district court, in a close case, the opportunity to review the court's prior ruling, often rapidly made, and allows the court to avoid error by providing the defendant with an additional peremptive strike after more thorough consideration.

Under our approach, *Neuendorf* remains good law where a judge improperly denies a challenge for cause but the defendant does not specifically ask for an additional peremptory challenge of a particular juror after exhausting his peremptory challenges under the rule. When a defendant identifies a particular juror for an additional peremptory challenge and the district court denies the additional peremptory challenge, however, the defendant is in

---

**3.** Even under the traditional automatic reversal rule, we held that a defendant must exhaust all peremptory strikes in order to challenge a district court's failure to strike a potential juror for cause. *See State v. Tyler*, 122 Iowa 125, 130, 97 N.W. 983, 985 (1904); *State v. Hunter*, 118 Iowa 686, 690–91, 92 N.W. 872, 873 (1902); *State v. Elliott*, 45 Iowa 486, 487 (1877).

precisely the same position as the defendant in *Mootz*, namely, a juror is actually seated who should have been subject to a peremptory challenge. 808 N.W.2d at 226. In this setting, reversal is required.

■ In this case, Jonas did not identify an additional juror who the defense sought to remove from the jury through the exercise of an additional peremptory challenge. As a result, the actual prejudice test of *Neuendorf*, rather than the automatic prejudice test of *Mootz*, controls. As a result, the defendant cannot succeed in this appeal.

## IV. Conclusion.

For the above reasons, we affirm the judgment of the trial court on the issue of juror disqualification. On all other issues, the decision of the court of appeals stands.

**AFFIRMED.**

All justices concur except Waterman, Mansfield, and Zager, JJ., who concur specially.

WATERMAN, Justice (concurring specially).

I concur with the result of the majority opinion affirming Stephen Jonas's conviction for second-degree murder. I write separately because I disagree with the majority's conclusion that the district court abused its discretion by denying Jonas's motion to disqualify the juror for cause. In my view, the district court acted within its discretion. I would affirm Jonas's conviction on that basis and leave the rest of the majority's discussion for another case and another day.

A prospective juror must be dismissed for cause when he or she has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." Iowa R. Crim. P. 2.18(5)(*k*). Jonas failed to establish disqualification was required under that standard. It is undisputed this prospective juror did not know Jonas or the victim or anything about the case, and Jonas makes no claim this person or anyone close to him ever had a bad experience with a gay person. Nothing in this prospective juror's life experience disqualified him. Nothing he said showed he was unable to decide the case based on the evidence and the court's instructions. To the contrary, when the trial judge asked if he was "going to be able to follow what the law says," he unequivocally answered, "Yes."

Some citizens summoned for jury duty look for a way out. Trial judges risk a mass exodus for the door if they are too quick to excuse prospective jurors based on asserted inconvenience or vocalized angst about a type of claim or lifestyle.[4] I have seen it happen. My takeaway from reviewing the juror questionnaire and the cold transcript of the voir dire is that this prospective juror was concerned about the time required to serve, was honest about his personal views, but was capable of being a fair juror.

On the questionnaire, he expressed concern about being away from work for the expected duration of the trial likely to extend into a second week, explaining, "I schedule ... trucks across the country. It

---

4. The district court appropriately conducted individual voir dire outside the presence of other prospective jurors in this highly publicized first-degree murder trial with a prominent victim. In routine cases, Iowa courts appropriately conduct more time-efficient group voir dire in which prospective jurors can respond to common questions with a show of hands. The trial judge can read the room and observe the reactions of prospective jurors.

would be hard keeping these people in work if I did not schedule it." He also characterized himself as "very conservative" on a spectrum ranging from "very liberal" to "very conservative" regarding the criminal laws. This made him a likely candidate for a defense peremptory strike regardless of any other circumstances. On the question noting that the defendant is gay and asking whether this would in any way influence your ability to be fair and impartial, the juror admitted, "I would try to keep an open mind, but I would have a hard time overlooking it." Yet he also agreed that he would "listen to and consider all the evidence before making a final decision in this case." He did not mark as true or mostly true statements that "being gay is immoral" or "being gay is a sin." In response to the last question, he stated that he thought he would be a good juror in the case and "would try to keep an open mind."

The first part of voir dire was conducted by the prosecution. Even after reminding the prospective juror that the defendant was gay, the prosecution drew no troubling responses at all. The prospective juror concluded his answers by agreeing that he would make a good juror because he would keep an open mind.

The second part of the voir dire was conducted by defense counsel. The prospective juror at this stage admitted that "somewhere in the back something is going to come up," and the defendant "probably would have better jury selection than myself." At this point, the prosecution came back and asked more questions, but the juror continued to say that the defendant "would probably do better with someone else" and "something would come up in the back of my mind." ·

The court took over questioning but received essentially the same answers: (1) "there could be something in the back of

my mind," and (2) the defendant "would probably do better without me on the jury." Yet the juror also confirmed he would follow the law and the evidence.

On this cold record, I see no abuse of discretion by the trial judge. As the trial judge said in denying the defense's motion to strike for cause,

> [M]y problem is he has said that he's going to have it in the back of his mind and that this defendant would be better off not having him as a juror. After he said that, he still continues to express the opinion that he could be fair and unbias[ed] and be able to try a fair case.

This ruling seems to me entirely defensible. The test on a for-cause challenge should not be whether a prospective juror has something "in the back" of their mind or whether one of the parties would "do better" with a different juror. Those are precisely the kinds of answers that ought to trigger the use of a peremptory strike, but they are not enough to mandate that a juror be excused for cause. All of us walk around with our own notions, biases, and experiences and, in any given case, would make a better juror for one side rather than the other. That is what peremptory strikes are for.

Furthermore, the trial judge, a veteran of many jury trials, made this judgment call denying disqualification based not on the cold transcript we review, but rather on his personal observations and interactions with the prospective juror. For good reasons, appellate courts traditionally and quite appropriately defer to the trial court's superior vantage point, and we therefore review rulings on motions to disqualify jurors under the abuse-of-discretion standard. *See State v. Tillman*, 514 N.W.2d 105, 107 (Iowa 1994) ("In ruling on a challenge for cause, the district court is vested with broad discretion."). As the

United States Supreme Court aptly observed,

> Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty.

*Skilling v. United States*, 561 U.S. 358, 386, 130 S.Ct. 2896, 2918, 177 L.Ed.2d 619 (2010); *see also Thompson v. Keohane*, 516 U.S. 99, 111, 116 S.Ct. 457, 464–65, 133 L.Ed.2d 383 (1995) (noting the assessment of a juror's impartiality "depends heavily on the trial court's appraisal of witness credibility and demeanor" and stating that "[t]his Court has reasoned that a trial court is better positioned to make decisions of this genre, and has therefore accorded the judgment of the jurist-observer 'presumptive weight' "); *Patton v. Yount*, 467 U.S. 1025, 1036–38, 104 S.Ct. 2885, 2891–92, 81 L.Ed.2d 847 (1984) (explaining that a trial court's ruling on a challenge for cause receives "special deference" because "the determination has been made only after an often extended voir dire proceeding designed specifically to identify biased veniremen" and "the determination is essentially one of credibility, and therefore largely one of demeanor"). This deference is shared by other state supreme courts. *See, e.g., Thomas ex rel. Thomas v. Mercy Hosps. E. Cmtys.*, 525 S.W.3d 114, 118 (Mo. 2017) (en banc) ("The trial court is in the best position to evaluate a venireperson's qualifications to serve as a juror and has broad discretion in making the evaluation." (quoting *Joy v. Morrison*, 254 S.W.3d 885, 888 (Mo. 2008) (en banc))).

We do not live in a world where prospective jurors under questioning make clean responses that automatically eliminate all doubt about their fairness (and I might be worried about the candor of jurors who gave such responses). As the United States Supreme Court has recognized,

> The testimony of each of the three challenged jurors is ambiguous and at times contradictory. This is not unusual on voir dire examination, particularly in a highly publicized criminal case. It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially. The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.

*Patton*, 467 U.S. at 1038–39, 104 S.Ct. at 2893. The Missouri Supreme Court recently reiterated the distinction "between the disqualifying bias of those who have formed an opinion on the material facts of the case, and other types of bias that are merely 'opinions about "larger issues" ' ... that all prospective jurors will have to some extent," which are disqualifying only if they preclude following the court's instructions. *Thomas*, 525 S.W.3d at 118 (citation omitted) (quoting *Ray v. Gream*, 860 S.W.2d 325, 333 n.1 (Mo. 1993) (en banc)). The prospective juror challenged by Jonas had no opinions or knowledge about the case. I would not second-guess the trial judge's assessment that the challenged ju-

ror would follow the court's instructions and decide the case based on the evidence, regardless of the defendant's sexual orientation.

While I do not think precedents are all that helpful in this area of trial judge discretion, I would note the following cases in which appellate courts have affirmed rulings denying disqualification for cause of jurors in criminal trials of gay defendants despite the juror's personal feelings against homosexuality. *See, e.g., United States v. Elfayoumi*, 66 M.J. 354, 355 (C.A.A.F. 2008) (The court held there was no abuse of discretion when prospective juror said, "I feel that [homosexuality] is morally wrong. It is against what I believe as a Christian and I do have some strong opinions against it" but replied, "Yes, sir" after being asked, "Do you think, with your moral beliefs that you can fairly evaluate the evidence of this case given the nature of the allegations?"); *People v. Simon*, 100 P.3d 487, 493, 495 (Colo. App. 2004) (holding no abuse of discretion in denying motion to dismiss for cause a juror who expressed that the defendant's homosexuality "made her feel 'sick'" and "that her belief system 'says homosexuality is wrong'" but also stated that she "would put her feelings aside, refrain from allowing them to enter into her deliberation, and abide by the judge's instructions"); *People v. Hoskay*, 87 P.3d 194, 196 (Colo. App. 2003) (holding no abuse of discretion when the prospective juror "had a religious objection to homosexuality and admitted that if she were in defendant's position, she would be concerned about having a person such as herself on the jury" but said "she would 'judge solely upon the evidence that's presented' and 'would never send someone [to prison] for something [she] did not feel ... they committed just based upon some feelings that [she had] about certain subjects'" (alterations in original)); *T.K.'s Video, Inc. v.*

*State*, 871 S.W.2d 527, 528–29 (Tex. App. 1994) (holding no abuse of discretion in denying motion to dismiss for cause when the potential juror "condemned [homosexuality] as shameful, morbid and sick" and acknowledged that objectivity is "something [he] would struggle with" but stated, "I think that I could be objective enough, though, to the best of my abilities to carry out the Judge's instructions"); *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535, 551–53 (1996) (holding no abuse of discretion for denying defendant's motion to dismiss two potential jurors who indicated they could "adhere to the evidence" in deciding the case despite the fact that one "said he was 'one hundred percent' against homosexuality" and the other "expressed strong feeling that he believed homosexuality is wrong and a homosexual is in need of reform"). Note that the jurors allowed to sit in these cases expressed much stronger opinions against homosexuality than the prospective juror challenged by Jonas (who declined to agree that being gay is a sin or immoral). The weight of this authority refutes Jonas's claim that the trial court abused its discretion by denying his motion to disqualify the juror for cause.

The majority relies on readily distinguishable cases to support its conclusion that the district court abused its discretion. *Morgan v. Illinois* held a trial court could not refuse inquiry into whether potential jurors would automatically impose the death penalty upon conviction of the defendant, regardless of whether they stated they would "follow the law." 504 U.S. 719, 734–36, 112 S.Ct. 2222, 2232–33, 119 L.Ed.2d 492 (1992). By contrast, here, the district court freely allowed voir dire into prospective jurors' attitude toward gay people, and the person challenged never suggested the defendant's sexual orientation would dictate his verdict. *Dyer v. Calderon* held a juror who lied in voir dire

about never being a victim of crimes and about her brother's shooting death should have been removed for cause. 151 F.3d 970, 981, 985 (9th Cir. 1998). The prospective juror Jonas challenged was entirely candid about his attitudes and withheld no prior experiences reflecting on his ability to be fair. In *State v. Fletcher*, the appellate court held the trial court acted within its discretion by asking follow-up questions in voir dire and allowing a juror to sit on a drug case despite her positive experiences with law enforcement witnesses and her son's role as a confidential informant. 353 P.3d 1273, 1278, 1281–82 (Utah Ct. App. 2015). That case supports my conclusion the court acted within its discretion here. *Gosling v. Commonwealth* held the trial court erred by failing to strike a juror who acknowledged in voir dire that he would accept the testimony of a corrections officer over an inmate. 7 Va.App. 642, 376 S.E.2d 541, 544–45 (1989). The prospective juror challenged by Jonas never indicated he would believe one witness over another. Finally, the concurring opinion in *People v. Merrow* criticized a "record laden with leading questions by the trial court" that is quite different from the record here. 181 P.3d 319, 323 (Colo. App. 2007) (Webb, J., concurring specially).

I respect the opinion of jurists who refrain from rehabilitating jurors challenged for cause. *See generally* Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of* Batson, *and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010) (noting jurors almost always say what they think the judge wants to hear). But "lawyers may have an incentive to keep a juror whose biases increase the lawyer's chances of winning." *Id.* at 166. Some judicial intervention may be appropriate when the lawyer-advocates conduct voir dire through leading questions or oth-

er tactics seeking a jury favorable to their client. I defer to the trial judges to best decide how to engage prospective jurors. *See State v. Barrett*, 445 N.W.2d 749, 753 (Iowa 1989) (explaining district court may participate in voir dire to determine a juror's state of mind); *Thomas*, 525 S.W.3d at 119–20 (discussing trial court's obligation to follow up on equivocal statements by "question[ing] the juror further to either confirm the lack of qualifications to serve, or to rehabilitate the venireperson" (quoting *Rodgers v. Jackson Cty. Orthopedics, Inc.*, 904 S.W.2d 385, 387–88 (Mo. Ct. App. 1995))). In any event, I am not really sure this is a case about rehabilitation, and I would refrain from micromanaging voir dire from our vantage point.

The prosecution could have and perhaps should have avoided this appeal issue altogether by consenting to the dismissal of the prospective juror who Jonas challenged for cause. But it is not our role to second-guess the State's decision not to join in Jonas's for-cause challenge. Regardless, Jonas removed the juror by using one of his ten peremptory challenges, so the challenged juror did not sit.

For all these reasons, I would decide this case by holding the district court acted within its discretion in denying Jonas's motion to strike the prospective juror for cause.

Mansfield and Zager, JJ., join this special concurrence.