# IN THE COURT OF APPEALS OF IOWA

No. 17-0277
Filed March 7, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARK ALAN TROUTMAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Mills County, James S. Heckerman, Judge.


        Mark Troutman appeals from his conviction for murder in the first degree. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.


        Considered by Vogel, P.J., Potterfield, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Mark Troutman shot and killed his ex-girlfriend after being unhappy with how their relationship ended. A jury found him guilty of murder in the first degree. On appeal, Troutman contends the district court erred in overruling his motion to strike a potential juror for cause, his counsel was ineffective, and his conviction was against the weight of the evidence. Facts will be set forth below as are relevant to the issues raised.

## I.    *Challenge for Cause*

Troutman claims the district court erred in overruling his motion to strike a potential juror for cause. Iowa Rule of Criminal Procedure 2.18(5)(k) allows a party to challenge a prospective juror if the juror "form[s] or expresse[s] such an opinion as to the guilt or innocence of the defendant [that] would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." The district court is vested with broad discretion in ruling on a challenge for cause. *State v. Tillman*, 514 N.W.2d 105, 107 (Iowa 1994).

During voir dire, defense counsel moved to strike a number of jurors for cause. The district court granted several motions by counsel but denied his motions to strike Jurors A, B, C, and D. Juror D was ultimately struck by the State's use of a peremptory strike. Defense counsel used peremptory strikes to remove Jurors A and B. Neither side used a peremptory strike to remove Juror C. Counsel used all ten of Troutman's peremptory strikes and did not request additional strikes after he exhausted his peremptory challenges.

Troutman contends the court erred in overruling counsel's challenge to Juror C.[1]

He further claims, "Forcing trial counsel to eliminate jurors through the use of

---

[1] Defense counsel's concern with Juror C was with regard to Troutman's intoxication defense. But we question whether the district court's decision to overrule defense counsel's motion to strike Juror C was improper; discussion during voir dire appears to support the court's finding that Juror C had the ability to be fair and impartial on that legal issue. *But see State v. Jonas*, 904 N.W.2d 566, 575 (Iowa 2017) ("Where a potential juror initially repeatedly expresses actual bias against the defendant based on race, ethnicity, sex, or sexual orientation, both in a pretrial questionnaire and in voir dire, we do not believe the district court can rehabilitate the potential juror through persistent questioning regarding whether the juror would follow instructions from the court.").

Defense counsel first broached the issue of intoxication with Juror C in this exchange during voir dire:

Q. Well, what if someone said that they—they were so intoxicated so that made it a different degree of guilt? Would you be able to buy something like that or does that matter to you? A. No.

Q. No? A. No.

Q. Never be able to go there? A. No.

DEFENSE COUNSEL: Okay. I'd move for cause.

The following exchange then took place between the court and Juror C:

COURT: Could—we've just kind of hit you blindsided on this thing but you don't strike me as somebody that would take this lightly, that you know that this is a very serious responsibility that the jury would have. Intoxication has a defense—I mean, it has a definition. It's not just drunk or not drunk. I mean, there's more to it than that. And can you follow the law and that—the intoxication defense, can you read that and make a determination whether or not that applies to this case?

JUROR C: Okay. So you're saying that there's an actual intoxication defense that lays it out?

COURT: That defines it.

JUROR C: Because I guess in my own mind I think you made the judgment call to be intoxicated so you have to take responsibility for your actions. However—

COURT: See, that's exactly what the definition addresses is those things. And so it can sort that out for you—

JUROR C: So yes, okay.

COURT: I mean, we're just kind of—on one issue saying are you going to buy intoxication, no, then you've got to go. No, that isn't what we're trying to say. It's just will you listen to the evidence submitted by the parties. The definition of murder in the first degree is set out in the instructions. The definition of all the—the lesser included offenses are included. The defenses that are available to Mr. Troutman are all set out and defined. Can you read those and—you're not the first one that's come in here and said intoxication, no way. It's just—but can—it's not a question of whether or not you like intoxication as a defense or not. It's the law. Can you read that and decide based upon the—an impartial reading of that, knowing that's the law, make a determination with respect to whether or not that applies in this case or does not apply in this case?

peremptory strikes who should have been struck for cause resulted in structural error in the proceedings . . . ."

After the parties filed their briefs, the supreme court addressed the issue of disqualification of jurors for cause in *State v. Jonas*, 904 N.W.2d 566, 576-85 (Iowa 2017). The court clarified Iowa's view on the question of prejudice when the court improperly refuses to disqualify a potential juror. *Jonas*, 904 N.W.2d at 583-84. Specifically, the court held:

> [I]n order to show prejudice when the district court improperly refuses to disqualify a potential juror under Iowa Rule of Criminal Procedure 2.18(5)(k) and thereby causes a defendant to expend a peremptory challenge under rule 2.18(9), *the defendant must specifically ask the court for an additional strike of a particular juror after his peremptory challenges have been exhausted*. Where the defendant makes such a showing, prejudice will then be presumed.

*Id.* at 583 (emphasis added) (footnote omitted). The court reasoned:

> This three-pronged approach discourages a defendant who is satisfied with a jury notwithstanding judicial error in failing to strike a potential juror for cause from engaging in a sandbagging approach of awaiting the results of a jury verdict before crying foul. It also tends to avoid another sandbagging scenario *where the defense leaves an unqualified juror on the panel, awaits the verdict, and then appeals*.[2]

*Id.* (emphasis added) (internal citation omitted).

Here, Troutman exhausted his peremptory challenges but "did not identify an additional juror who the defense sought to remove from the jury through the exercise of an additional peremptory challenge." *Id.* at 584. Accordingly, prejudice from seating the challenged juror cannot be presumed and Troutman

---

JUROR C: I think I can make a decision based on that.
In any event, for the reasons that follow, we need not decide whether the court erred in denying defense counsel's motion to strike Juror C in this case.
[2] This second "sandbagging scenario" imagined by the court is precisely what happened in this case.

"cannot succeed in this appeal." *Id.*; *see State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993) ("In the absence of some factual showing that this circumstance resulted in a juror being seated who was not impartial, the existence of prejudice is entirely speculative."). We affirm on this issue.

## II.     *Inference Jury Instruction*

Troutman challenges the district court's inference instruction to the jury: "If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation, and specific intent to kill." Troutman acknowledges, "The Iowa Supreme Court has approved use of inference instructions under appropriate circumstances and has recognized that such instructions are generally supported by Iowa law," but he contends, "The evidence presented at trial in the instant case did not support introduction of the inference instruction." He asserts his counsel was ineffective in failing to object to the instruction. To prevail, Troutman must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We review ineffective-assistance claims de novo. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

The supreme court recently addressed the malice-inference instruction in *State v. Green*, 896 N.W.2d 770, 781 (Iowa 2017). The court reaffirmed longstanding precedent approving the malice-inference instruction, rejecting an identical contention that the instruction was inappropriate under similar circumstances. *See Green*, 896 N.W.2d at 780-81 (observing the court has "permitted the practice of instructing juries on inferences of malice from certain

evidence since 1858"). While "[t]here may be circumstances where it would not be appropriate to infer malice," including where "the defendant had adequate provocation or fear of imminent bodily harm to use the weapon," as in *Green*, the instruction was appropriate under the facts of this case; although Troutman did not normally carry his gun and he did not have a holster for it, he brought the gun to K.'s workplace and shot her in the head. *See id.* at 780 (noting court has approved an inference instruction "when defendants discharged a firearm aimed at a victim"). In short, counsel did not breach an essential duty in failing to challenge the instruction. *See State v. Crisp*, No. 16-1252, 2017 WL 6033872, at *2 (Iowa Ct. App. Dec. 6, 2017) (rejecting the same challenge to an inference instruction based on the court's holding in *Green*).

### III.    *Motion for New Trial*

Troutman further contends the district court abused its discretion in denying his motion for new trial, claiming the weight of the evidence does not support the jury's finding that he committed murder in the first degree. Specifically, Troutman claims, "The weight of the evidence produced at trial points to the intent of [Troutman] to commit suicide in front of [K.]," "[t]here was no threat of harming [K.]," and "[t]here was also substantial evidence [Troutman] was intoxicated."

"We accord the district court 'broad discretion in ruling on a motion for new trial.'" *State v. Neiderbach*, 837 N.W.2d 180, 211 (Iowa 2013) (quoting *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003)). "We reverse the district court only if it has abused its discretion." *Id.* "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of

the underlying question of whether the verdict is against the weight of the evidence." *Reeves*, 670 N.W.2d at 203. Upon our review of the evidence presented, we find the court did not abuse its discretion in denying Troutman's motion for a new trial.

The jury heard testimony and viewed exhibits that told a story of Troutman's anger after K. broke off their long-distance relationship and began dating someone else. Over several months, Troutman made harassing and threatening comments to K. and her new boyfriend through text messages and on social media. Troutman, who was from Ohio, returned to Iowa and drove by K.'s workplace several times before the final time, when he slashed her tires and shot and killed her in the parking lot. Troutman admitted he "once contemplated a murder/suicide" scenario, but he also commented, "I couldn't kill myself"; "I killed her"; "I just couldn't live with what she did. Knowing she didn't want to be with me"; "That's why I did it . . . . I can't live with that and neither should she." As the State correctly points out, "Even if Troutman had intended on killing himself, the evidence shows he had the intent to kill [K.] as well." It was the jury's role to weigh the evidence and arguments made by the parties; this case does not present the unusual situation where there is reason to believe that critical evidence was ignored in the jury's fact-finding process.

Upon consideration of the issues raised on appeal, we affirm Troutman's conviction for murder in the first degree.

**AFFIRMED.**