# IN THE COURT OF APPEALS OF IOWA

No. 19-1632
Filed January 21, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRIAN JOHN LINDEMANN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clarke County, Martha L. Mertz,

Judge.


        Brian John Lindemann appeals his convictions and sentences for willful

injury causing serious injury, assault causing bodily injury, domestic abuse assault

with intent to inflict serious injury, and domestic abuse assault causing bodily

injury.  **CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART,**

**SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**


        Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, and Mathew D.

Zinkula of Booth Law Firm, Osceola, (until withdrawal) for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee.


        Heard by Bower, C.J., and Vaitheswaran and Greer, JJ.

**BOWER, Chief Judge.**

Brian John Lindemann appeals his convictions and sentences for willful injury causing serious injury, assault causing bodily injury, domestic abuse assault with intent to inflict serious injury, and domestic abuse assault causing bodily injury. Lindemann asserts several errors: (1) the treating physician impermissibly vouched for the credibility of the complaining witness, (2) the district court abused its discretion in denying Lindemann's motions to strike two potential jurors for cause and (3) the district court abused its discretion in allowing the State to amend the trial information, (4) the sentence imposed for assault causing injury was illegal, and (5) the court considered impermissible factors when imposing consecutive sentences.

We discern no abuse of discretion in the court's evidentiary ruling, in denying two motions to strike for cause, or in allowing the amendment of the trial information. However, the sentence imposed on count III was illegal. Therefore, we affirm the convictions with the exception of count III, which we reverse, and we vacate the sentence on count III and remand for resentencing.

**I. Background Facts and Proceedings.**

On August 18, 2018, R.M. returned home from work to take her daughter to a car show. Although R.M. and Lindemann lived together as a couple and Lindemann usually stayed in R.M.'s room, Lindemann had his own bedroom in the home. R.M. knocked on Lindemann's bedroom door and he asked her to come inside and sit down on a chair. For the next two hours, Lindemann physically and verbally assaulted R.M.

Lindemann began by punching R.M. while she sat in the chair. He continued to punch her, taking occasional breaks to stop and shout insults at her. At one point during the barrage, Lindemann took a drink from a whiskey bottle and in an ensuing struggle the bottle broke over R.M.'s head. Lindemann resumed punching R.M., who pulled her knees to her chest and covered her head with her arms.

Lindemann then grabbed R.M. by her hair, dragged her to the floor, and kicked her. Lindemann ordered R.M. back to the chair and ripped mini blinds off the window and hit her with the blinds until they broke.

Lindemann then made R.M. lay on the bed, took her phone away, and continued to punch and yell at her. R.M. was trying to block the punches and Lindemann responded by telling her to keep her arms at her sides and threatened to kill her. R.M. quit blocking the blows and Lindemann punched her "really hard" in her eye and told her he had never punched anyone so hard.

In an attempt to get away, R.M. told Lindemann she loved him and agreed to clean up the glass and blood. Lindemann permitted R.M. to leave the room with her phone. R.M. went into the bathroom, took a shower, changed her clothes, got her daughter, grabbed her phone, and drove to the emergency room (ER), where she spent the next several hours.

Dr. Kelly Bast attended R.M. in the ER. R.M. complained of a headache; had facial swelling; was having a hard time seeing out of her left eye; and had pain in her left shoulder, right thigh, arms, and right anterior chest. Dr. Bast observed lacerations on R.M.'s head; a puncture wound to the scalp; swelling and bruising to her ears "consistent with blunt trauma"; swelling around both eyes, with the left

being "much worse than the right"; and multiple bruises to the back sides of the arms. In addition, Dr. Bast observed:

> There were on the left upper chest some bruises that had yellowish discoloration. They were about an inch or two in size. There's maybe four of them, three. These appeared to be older because of the yellowish continuing on it rather than acute bruising. There was—on the right side of her chest at the fifth, sixth and seventh rib areas where the bone of the rib ends and the cartilage of the rib joins, there were bruises and soreness in that area as well.

Dr. Bast also noted tenderness and swelling to R.M.'s right thigh. Dr. Bast ordered a CT scan of R.M.'s facial bones, which found a fracture of the bone below R.M.'s left eye.

While at the hospital, R.M. met with law enforcement official Deputy George Barber. Deputy Barber took R.M.'s statement, observed and photographed her injuries, and spoke with medical staff.

Deputy Barber and Deputy Brian Akers went to R.M.'s residence twice, finding Lindemann there on the second trip. Deputy Barber asked Lindemann what had happened and received no response. Deputy Barber did not observe any injuries to Lindemann. Lindemann asked if R.M. was okay. Lindemann was arrested and charged with willfull injury resulting in serious injury and domestic abuse assault, display or use of weapons.

After depositions were taken, Lindemann filed a notice of self defense.

A week before the jury trial, the State moved to amend the trial information alleging: count I—willful injury resulting in serious injury, in violation of Iowa Code section 708.4(1) (2018) for injuries caused by the strike to the head with a glass bottle; count II—willful injury resulting in serious injury for a punch to the left eye causing injuries; count III—willful injury resulting in bodily injury for punches

causing injuries to the head, face, arms, torso, and legs; count IV—domestic abuse assault, in violation of Iowa Code section 708.2A(2)(c) (an aggravated misdemeanor) for injuries caused by a strike to the head with a glass bottle; count V—domestic abuse assault (aggravated misdemeanor) for a punch to the left eye causing injuries; count VI—domestic abuse assault, in violation of Iowa Code section 708.2A(2)(b) (a serious misdemeanor), for punches causing injuries to the head, face, arms, torso, and legs; and count VII—domestic abuse assault (aggravated misdemeanor) for injuries caused by a strike to the head with a glass bottle. Though the defense resisted, the trial court allowed the amendment after a hearing.

Lindemann filed a motion in limine, in part to prevent Dr. Bast from commenting on R.M.'s credibility either directly or indirectly. At the pre-trial hearing, the court noted "it is difficult to tell where the line is" between permissible observation and impermissible vouching. Defense counsel stated, "I don't necessarily know. And I don't want to commit myself to saying, no, that's not objectionable or that might be. I guess, if nothing else, I may be putting the court and counsel on notice that I may have a few objections as they—as they come up." In a written order, the court ruled Dr. Bast "may testify regarding facts and history related to treatment" and "may not express an opinion on the victim's credibility."

During voir dire, Lindemann's challenges to two potential jurors for cause were rejected, whom we will refer to as potential Jurors A and B. Lindemann used peremptory challenges to strike the jurors.

At trial, Dr. Bast testified R.M. received "multiple injuries including [a] facial fracture, scalp laceration, multiple bruises, chest wall contusion, thigh muscle contusion," and a mild concussion. He testified, "Certainly the bruising location on her arms were, in my opinion, a defensive type of protection type of wounds sustained rather than from offensive action."

The jury found Lindemann not guilty on counts I, IV, and VII (all dealing with the strike to the head with a glass bottle). The jury found the punch to the eye resulting in the facial fracture was a separate act and found Lindemann guilty on count II, willful injury causing serious injury, and count V, domestic abuse assault with intent to inflict serious injury. On count III, the jury found Lindemann not guilty of willful injury but guilty of a lesser-included offense of assault causing bodily injury, and on count VI, it found him guilty of domestic abuse assault causing bodily injury. The court imposed sentences for counts II, III, V, and VI. However, on count III, the court entered a conviction for willful injury resulting in bodily injury, and the court sentenced Lindemann on that count to incarceration not to exceed five years.

Lindemann appeals, asserting Dr. Bast impermissibly vouched for the credibility of the complaining witness, the district court abused its discretion in denying Lindemann's motions to strike two potential jurors for cause, and in allowing the State to amend the trial information; the sentence imposed on count III was illegal; and the court considered impermissible factors when imposing consecutive sentences.

**II. Scope and Standards of Review.**

We review all the errors asserted for correction of errors at law, which extends to whether the district court abused its discretion (1) in its evidentiary rulings, *see State v. Walker*, 935 N.W.2d 874, 877 (Iowa 2019), (2) in denying the motions to strike potential jurors for cause, *see State v. Jonas*, 904 N.W.2d 566, 570–71 (Iowa 2017), and (3) in its within-statutory-limits sentencing decisions, *see State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017) (citation omitted). "Even if a trial court has abused its discretion, prejudice must be shown before we will reverse." *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).

When reviewing a resisted amendment to the trial information, our review is on two levels: (1) we review for an abuse of discretion if the amendment corrected errors or omissions that either are or are not substantive, and (2) we review for correction of errors at law if substantial rights of the defendant are prejudiced by the amendment or if a wholly new and different offense is charged. *State v. Maghee*, 573 N.W.2d at 1, 5 (Iowa 1997).

"We use the correction of errors at law standard when the statute does not authorize the sentence." *State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015); s*ee also State v. Petty*, 925 N.W.2d 190, 195 (Iowa 2019) ("We normally review claims of an illegal sentence for correction of errors at law.").

**III. Discussion.**

*A. Vouching and preservation of error.* We begin with Lindemann's evidentiary challenge that the court abused its discretion in allowing Dr. Bast to improperly vouch for R.M.'s credibility.

> Our system of justice vests the jury with the function of evaluating a witness's credibility. The reason for not allowing this testimony is that a witness's credibility "is not a 'fact in issue' subject to expert opinion." Such opinions not only replace the jury's function in determining credibility, but the jury can employ this type of testimony as a direct comment on defendant's guilt or innocence. Moreover, when an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth. In our system of justice, it is the jury's function to determine the credibility of a witness. An abuse of discretion occurs when a court allows such testimony.

*State v. Dudley,* 856 N.W.2d 668, 676–77 (Iowa 2014) (citations omitted).

The district court's in limine ruling contemplated the need for further objections. Preliminary rulings on motions in limine do not preserve error when no objection is subsequently made during the trial. *See State v. Tangie*, 616 N.W.2d 564, 568–69 (Iowa 2000) ("Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial."). The defense acknowledged the need to object at trial stating, "I may have a few objections as they—as they come up." *See* Iowa R. Evid. 5.103(a)(1)(A) (requiring a timely objection to evidentiary issues to preserve error). "Objections to evidence must be sufficiently specific to inform the trial court of the basis for objecting." *State v. Farni,* 325 N.W.2d 107, 109 (Iowa 1982); *see State v. Howard*, 509 N.W.2d 764, 769 (Iowa 1993) (holding that the confrontation and

foundation grounds for the objection were not sufficiently specific to inform the trial court of the hearsay basis urged on appeal).

At trial, Dr. Bast testified he had observed "mulitiple bruising" on R.M.'s arms. He continued: "Most of them were recent and these were on the extensor side of the arm or another name on the posterior or back sides of the arm. This is what you would see in somebody trying to—" Defense counsel objected as "witness is narrating." The court allowed the doctor to proceed. Dr. Bast then testified,

> When you try to protect yourself, you don't protect yourself with arms on this side. You can't really do that. You protect yourself like this so the extensor part of the arms are exposed to blows, that she's trying to protect her head or her vital organs from the blows that were oncoming.

This is a common-sense statement. Later, Dr. Bast testified:

> Q. . . . Did the nature of the injuries that [R.M.] sustained give you any additional insight about the mechanism of injury, for example, to her arms? A. Yes, yes. Certainly the bruising location on her arms were, in my opinion, a defensive type of protection type of wounds sustained rather than from offensive action.
>     [DEFENSE COUNSEL]: Objection. This is beyond the scope of this witness's competence.
>     THE COURT: Overruled. The answer will stand.
>     [PROSECUTOR]: I think I can lay additional foundation for that, your Honor.
>     THE COURT: All right.
>     Q. In instances of physical combat, are there injuries that you observe in the emergency room that would be consistent with offensive injuries? A. Yes.
>     Q. And along those same lines, are there injuries that you observe in the emergency room that would be consistent with defensive injuries? A. Yes.
>     Q. Generally speaking, what sort of offensive injuries would you expect to observe in the emergency room of someone involved in a physical combat situation? A. Well, I would see often bruises on the knuckles where they are hitting people or foot injuries. If they were to kick somebody really hard, they could injure their feet that way.

Q. And, again, generally speaking, what sort of injuries would you see in the emergency room that would be indicative of defensive injuries in a combat situation? A. That would be the extensor surfaces of arms and usually the forearms but can be the upper arm, too, to the backside or the posterior side of the arms.

*Q. In this case, did you note any injuries to [R.M.] that would be consistent with offensive injuries?*

[DEFENSE COUNSEL]: Objection, competence and I believe this is improper vouching by this witness.

THE COURT: Overruled at this time. I think it's consistent with the witness's testimony thus far.

*A. I did not see any injuries to her knuckles or hands to have any—had no other physical signs that I observed that would indicate offensive injuries.*

The emphasized language is the only question objected to on the ground of impermissible vouching, and we will confine ourselves to whether the court abused its discretion in overruling the objection.[1]

Dr. Bast was testifying as a fact witness in his role as the treating physician in the ER when R.M. sought treatment following the assault. Dr. Bast specifically testified about his physical observations of R.M. and her injuries, and his medical treatment and diagnosis. To treat R.M., Dr. Bast explained that it was necessary to determine how the injuries were made so the appropriate tests could be

---

[1] On appeal, Lindemann complains of other statements made by Dr. Bast, which he now asserts constituted improper vouching. He cites generally to twenty pages of testimony as support he has properly preserved error. This does not constitute the required "references to places in the record where the issue was raised and decided" contemplated by Iowa Rule of Appellate Procedure 6.903(g)(1) (requiring a brief to include "[a] statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided"). Moreover, the objections that were made—"narrating" and "beyond the scope of competence"—were not sufficiently specific to inform the court of the basis now raised—improper vouching. *See Howard*, 509 N.W.2d at 769 ("The grounds of the objection that Howard made when the State offered the statement into evidence—lack of foundation and violation of confrontational rights—were not sufficiently specific to inform the trial court of the hearsay basis now urged.").

performed to determine the severity of the injuries and aid in providing treatment. For example, Dr. Bast explained that a blow to the head could cause potentially fatal internal injuries if the extent of the injury is not diagnosed properly.

We do not find the question asked Dr. Bast to comment on R.M.'s credibility. *See State v. Basquin*, No. 17-0057, 2018 WL 1858378, at \*2–3 (Iowa Ct. App. Apr. 18, 2018) (finding a nurse practitioner's description the woman's injuries as consistent with the woman's narrative was not impermissible vouching, nor was deputy sheriff's opinion statements that the woman's injuries were consistent with assault). Dr. Bast was asked about the injuries he observed, and he opined R.M.'s injuries were consistent with defensive-type injuries and not consistent with offensive-type injuries. The statements concerning the positioning of defensive-type wounds are statements of common knowledge.

Dr. Bast testified the "reported mechanism of injury" to R.M.'s scalp was a whiskey bottle and the nature and severity of the stellate laceration was consistent with the report of being struck with a blunt object. No objection was made to this testimony. On appeal, the defense asserts this type of testimony vouches for the credibility of the witness with Dr. Bast giving his "scientific certainty stamp of approval" on the testimony of K.M.'s version of events. However, the jury found Lindemann not guilty with respect to any of the three charges related to the strike to the head with the bottle, which strongly suggests the jury properly exercised is function as fact finders and in determining the credibility of the witnesses.

With respect to the objection as to whether Dr. Bast observed any offensive-type injuries, we note that "[w]hen self-defense is raised, the burden rests with the State to prove beyond a reasonable doubt that the justification did not exist." *State*

*v. Fordyce*, 940 N.W.2d 419, 426 (Iowa 2020). Because Lindemann raised self-defense, the State had the burden to prove Lindemann's actions were *not* justified, which made the type of injuries R.M. presented at the ER relevant and probative. Under the record presented here, we find no abuse of the district court's discretion in overruling the vouching objection.

*B. Challenges for cause and preservation of error.* Iowa Rule of Criminal Procedure 2.18(5)(k) allows a defendant to challenge a potential juror for cause if the person has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." On appeal, Lindemann maintains the court abused its discretion denying his strike for cause of two jurors based on rule 2.18(5)(k). The district court is vested with "broad discretion" in ruling on for-cause challenges. *Jonas*, 904 N.W.2d at 571.

> On the issue of disqualification of a juror for cause, there is authority for the proposition that when a potential juror at the outset of voir dire expresses bias or prejudice unequivocally, the potential juror should be disqualified for cause notwithstanding later, generalized statements the potential juror could be fair.

*Id.*

*1. Prospective Juror A*—During voir dire, Juror A stated he could be fair and impartial. In a followup question, the defense asked:

> [DEFENSE COUNSEL]: What about the fact—and we've talked a little bit about this, what about the fact—that obviously my client, he's sitting here. He's been charged with a crime. Does that mean something to you? Is that significant?
> PROSPECTIVE JUROR [A]: Yes.
> [DEFENSE COUNSEL]: In what way?
> PROSPECTIVE JUROR [A]: They arrested him. He sat in jail, whatever the case maybe.
> [DEFENSE COUNSEL]: Can you speak up a little bit?

PROSPECTIVE JUROR [A]: I said he's already been arrested and sitting in jail.

[DEFENSE COUNSEL]: Okay. Does that tell you something about his guilt or innocence?

PROSPECTIVE JUROR [A]: Obviously, the police officers felt he was guilty to arrest him, I guess.

[DEFENSE COUNSEL]: What about you, does it make a difference to you whether or not—

PROSPECTIVE JUROR [A]: No.

[DEFENSE COUNSEL]: You've heard of the presumption of innocence before?

PROSPECTIVE JUROR [A]: Yes.

Juror A was questioned separately later during which Juror A addressed three concerns: (1) Juror A's mother was a retired jailer who may have known the defendant and he worried his mother might be retaliated against, (2) Juror A thought he remembered seeing the defendant in jail during a video conference he had with his son, who was in jail at the same time as the defendant, and (3) Juror A believed a person was not arrested unless the police thought the person was guilty. The prosecutor asked, "Do you think that you could make a decision about Mr. Lindemann's guilt or innocence based solely on what you hear in court?" To which Juror A responded, "Possibly."

The defense asked Juror A a number of questions, including the following:

[DEFENSE COUNSEL]: I think what you said was they don't arrest someone for no apparent reason.

PROSPECTIVE JUROR [A]: That's usually been the way I've viewed things, I guess.

[DEFENSE COUNSEL]: Obviously, my client's been arrested, agreed?

PROSPECTIVE JUROR [A]: Yes.

[DEFENSE COUNSEL]: So do you feel like at this point, even though you haven't heard any evidence, you already feel like my client is likely guilty of something?

PROSPECTIVE JUROR [A]: Possibility, yes. You know, yeah—I don't—I haven't heard no evidence or nothing, but I don't know if I could give an honest decision.

[DEFENSE COUNSEL]: So the bottom line is based on all these reasons, you don't believe that you could be fair and impartial in this case, is that true?

PROSPECTIVE JUROR [A]: Yes.

The defense made a motion to strike for cause.

The court denied the motion after asking Juror A additional questions:

THE COURT: . . . Understanding that lots of people get arrested, not everybody gets convicted, correct?

PROSPECTIVE JUROR [A]: Right.

THE COURT: At the end of the trial I'm going to instruct the jury on what the State's required to prove as to each count against Mr. Lindemann. Can you at this point without reference to your mother or your son or whether there's smoke, there's fire listen to the evidence and then, when I instruct the jury, follow my instructions?

PROSPECTIVE JUROR [A]: Yes, I can follow instructions.

*2. Prospective Juror B*—The defense moved to strike for cause a second juror—Juror B—when the juror brought to the court's attention she worked with Dr. Bast and had been involved in a malpractice case with Dr. Bast. During questioning Juror B stated, "I feel I can remain objective through a court hearing. I do believe, you know, through that experience only enhanced my knowledge of Dr. Bast's honesty and credibility." The prosecutor expressed concern to Juror B that she might "influence the jury by telling them about Dr. Bast's credibility apart from what we heard in court." Juror B responded, "No. I would know that would not be appropriate." And she stated she had not made up her mind about the case.

After excusing Juror B, the defense contended:

She talked about having—she works with one of the four State's witnesses. She's been—I think it sounds like worked with him pretty closely and specifically commented that a malpractice case in her words enhanced her knowledge of his honesty and credibility. Frankly, I don't know what that means. It could mean she doesn't think he's necessarily someone of honesty and integrity. Either way she's got an opinion about him from a personal working relationship, and the State is going to be offering testimony through him of

statements that the alleged victim said and whether or not injuries of hers, he believes, are consistent with other things she may describe. I simply think her relationship is too close to this witness to be able to listen to the evidence the same as her fellow jurors.

The court stated:

Well, the court to the extent that [defense counsel] said we don't know if her accumulated knowledge with regard to Dr. Bast is good or bad, but I don't think there's a sufficient record for a challenge for cause. He's a fact witness and as a result even though he is able to describe the history he got and matters related to that, the court, I think, has already ruled on the motion in limine. He cannot vouch for the victim. There is, as [defense counsel] pointed out on Friday, kind of a thin line there. But I don't expect either attorney to go over it. I have confidence in the professional ability of both counsel, and I'm going to deny the challenge for cause.

A for-cause challenge should be granted when a potential juror makes an expression of actual, unequivocal bias. *See id.* at 575. We cannot say either potential juror expressed actual, unequivocal bias, and thus, the trial court did not abuse its discretion in denying the for-cause strikes.

In any event, neither potential juror sat on the jury and Lindemann has failed to show any prejudice resulted. In *Jonas*, our supreme court ruled,

[I]n order to show prejudice when the district court improperly refuses to disqualify a potential juror under Iowa Rule of Criminal Procedure 2.18(5)(k) and thereby causes a defendant to expend a peremptory challenge under rule 2.18(9), the defendant *must specifically ask the court for an additional strike of a particular juror* after his peremptory challenges have been exhausted.

*Id.* at 583 (emphasis added).

Here, after the jury was sworn, the following exchange occurred:

[DEFENSE COUNSEL]: One more thing, your Honor. Again, we discussed this off the record when we were doing individual voir dire. But I did request two challenges for cause that the court did deny, and I believe based on some more recent case law that's come down on that, in order to make my record on that, I did have to use strikes for both of those jurors. That would have been juror 8, [Juror

A], and juror 11, [Juror B], and I'll just refer to my earlier record on them. I used strikes for both of them. I asked the court, or I had indicated to the court, *that I would be requesting two additional strikes* because I had to use my two strikes for them and so, again, I'm just making my record of that request at this point.

. . . .

THE COURT: The court denies the request. If the court believed there was a basis to sustain the challenge for cause, the court would have done it at the time. The court does not believe there was. Certainly there were comments made, but neither juror struck the court as being unable to perform the job of a juror. I understand you need to make your record. The request is denied.

(Emphasis added.) Although Lindemann requested additional peremptory challenges, he did not include a request "for an additional strike of a *particular* juror." *See id.* Lindemann's complaints with regard to the two for-cause strikes are without merit.

*C. Amending the trial information.* Lindemann next asserts the court erred in permitting the State to amend the trial information to "to separate out each alleged individual act of assault" during the two-hour time frame of the August 18, 2018 encounter. He argues the amendment to the trial information created such a surprise that he had to change his trial strategy. He maintains that allowing the State to separate out each act of assault affected his self-defense strategy as he then had to show each assault was justified. We are not convinced.

Trial was continued on a number of occasions and eventually scheduled for July 29, 2019.

On July 18, the State filed a motion to amend the trial information and the defense filed a written resistance asserting in part:

[T]he Defendant is most certainly prejudiced by this last minute attempt to add multiple counts to the original indictment. The Defendant's trial strategy has been to respond to a single count of Willful Injury and Domestic Assault arising from one alleged

continuous assault, which has been the formal charge for nearly an entire year of prosecution. The Defendant's deposition of the alleged victim was conducted with the belief that he was defending a single, continuous assault. Had the charge been multiple acts the Defendant would have questioned the witness in a way designed to determine if the facts of the assaultive conduct would likely be one continuous act or a series of separate and distinct acts, addressing factors set forth in *State v. Ross*, including (1) the time interval occurring between the successive actions of the defendant, (2) the place of the actions, (3) the identity of the victims, (4) the existence of an intervening act, (5) the similarity of defendant's actions, and (6) defendant's intent at the time of his actions. *State v. Ross*, 845 N.W.2d 692, 705 (Iowa 2014).

A hearing on the motion was held July 26, and the district court ruled:

The court's going to allow the amendment of the trial information.
     The court finds and concurs with the State that there were multiple alleged assaults. It doesn't change the nature of the charges against the defendant. It increases the number of charges, but it doesn't change the nature of the charges.
     The court also concurs that the trial information is sufficiently detailed in terms of the minutes of testimony or evidence, whatever you want to call them, that you can tell where the breaks occur. It's up to the State to prove each of those assaults, but the court finds that there is sufficient basis in the minutes of testimony that it should not be an issue as to what he's charged with.
     He actually is not charged with a new and different crime. He's just charged with each individual assault—alleged assault in the—that's contained in the minutes of evidence.

We agree the amendment did not charge a wholly new or different offense. Lindemann faced the same charges before and after the amendment, the only difference being the number of individual assaults. *Cf. State v. Johnson*, No. 16-1693, 2018 WL 1182547, at *3–4 (Iowa Ct. App Mar. 7, 2018) (finding a wholly new or different offense where State chose to proceed on subsection (1) of Iowa Code section 709.4—sex act done by force or against the will of the other person—and after evidence presented at trial sought to amend to subsection (4) of section 709.4—sex act is performed while the other person is mentally

incapacitated, physically incapacitated, or physically helpless—and prejudiced defendant's substantial rights). The minutes of testimony were sufficiently detailed in R.M.'s allegations to provide the defense notice there were breaks and changes of location of the assaults during the two-hour ordeal. The defense was going to have to deal with those circumstances in any event. The attachment to the original minutes of testimony reflects that R.M.'s injuries were so severe that they required x-rays and a CT scan.

We also note Lindemann was given the opportunity to proceed with a same plea agreement that the State had offered prior to the amended trial information. *Cf. Johnson*, 2018 WL 1182547, at *4 (noting the State's amendment at the close of evidence prejudiced the defendant's decision to not enter a plea and to waive a jury trial and in his presenation of witnesses supporting a defense). Lindemann declined the offer.

It is true the amendment came some time after the original charges, but it was filed more than a week before trial. Lindemann was given adequate notice of the nature of the charges. And we find no record the defense requested a continuance to adjust trial strategy.

Lindemann claims that with the amended trial information, he had to "prov[e] at least three different and separate acts of self-defense." But it was the State's burden—not the defendant's—to show a lack of justification. Thus, by amending the trial information, the *State* had to show that each alleged assault was without justification. We discern no reversible error.

*D. Sentencing.* Lindemann makes two claims related to sentencing. He first contends the court entered an illegal sentence on count III. Secondly, he

asserts the court considered improper factors in imposing sentence. Because we find we must reverse and remand for resentencing on the first claim, we need not address the second.

Count III charged Lindemann with willful injury resulting in bodily injury, in violation of Iowa Code section 708.4(2), a class "D" felony. However, the jury found Lindemann guilty of the lesser-included offense of assault causing bodily injury, a serious misdemeanor. The court, however, entered judgment and imposed sentence for willful injury. This was error, which the State concedes.

In addition, count VI was based on the same facts as count III and the jury found Lindemann guilty of domestic abuse assault causing bodily injury, in violation of section 708.2A(2)(b). Count III assault causing bodily injury would therefore merge with count VI domestic abuse assault causing bodily injury.

Because the court has entered an erroneous judgment, we must vacate the conviction and sentence on count III and remand for resentencing.

**CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**