# IN THE COURT OF APPEALS OF IOWA

No. 23-1691
Filed March 19, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ELLIS EARL HOUK,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Taylor County, Patrick W. Greenwood, Judge.


        A defendant convicted for setting fire to his ex-wife's house challenges the denial of his motion to strike two jurors for cause and the admission of cell tower evidence linking him to the scene of the fire. **AFFIRMED.**


        R. Tim Jeffrey of McGinn, Springer & Noethe PLC, Council Bluffs, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.


        Considered by Schumacher, P.J., Chicchelly, J., and Telleen, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**TELLEEN, Senior Judge.**

Taylor County was the fourth least populous county in Iowa as of the 2020 census, with a population of just 5896.  As one prospective juror put it, "people know people."  It is therefore no surprise that empaneling a jury for Ellis Houk's trial was a difficult task.  But after circulating written questionnaires, conducting two days of voir dire, and sustaining more than two dozen strikes for cause, the district court was satisfied with the panel of prospective jurors left for the parties to pick.  Houk was not.

In this appeal, Houk challenges the denial of his motion to strike two young prospective jurors for cause after they admitted in voir dire that they would defer to the majority view of other jurors, even if not personally convinced of Houk's guilt beyond a reasonable doubt.  He also contests the district court's admission of cell tower evidence that linked him to the scene of the fire.  Because we find Houk cannot show the necessary prejudice to secure a new trial on his jury-selection claim, and because he failed to preserve his evidentiary objection, we affirm his conviction and sentence.

## I.      Factual and Procedural Background

On November 14, 2022, Houk's forty-four-year marriage came to an end.  Following a contested dissolution trial, the district court entered a decree dividing millions of dollars in marital assets between Houk and his ex-wife, Gayle.  But conflict continued to fester.  On November 19, Gayle retrieved from Houk's residence a toolchest that had belonged to her son.  Houk believed she took the wrong tools.  That evening, he made multiple calls to the Taylor County Sheriff's office, insisting that Gayle be charged for theft.  He also drove to the sheriff's office

to plead his case in person. Houk was turned away fuming. The deputy on shift saw Houk leave in a new, gray, mid-sized SUV.

Later that night, sometime between 2:00 and 3:00 a.m., Gayle awoke to the sound of breaking glass. She got out of bed to find her front window shattered and her curtains in flame. Gayle watched as a person "built like the shape of" her ex-husband broke a second window and threw a yellow five-gallon bucket into the house. When the bucket struck the ground, fire engulfed the room. Gayle escaped with serious burns. She was transported by helicopter to a Nebraska hospital, where she would spend months recovering from her injuries. Almost immediately, police recovered surveillance images showing a gray, mid-sized SUV parked outside Gayle's home at 2:43 a.m., its rear hatch ajar. The deputy who met with Houk earlier in the evening identified the vehicle as the "exact same SUV" that Houk had driven to the sheriff's office.

Police began looking for Houk. Using tower data provided by his cell phone carrier, they learned he was headed south. Authorities in Hartley County, Texas intercepted Houk driving a gray SUV without license plates. He told them he was headed to Port Isabel, Texas for medical treatment, although his explanations shifted. Houk would later allege he was on his way to Mexico. A search of Houk's vehicle turned up sleeping bags, work gloves, a handgun, and a copy of Houk's divorce decree. No passport, luggage, or toiletries were found inside.

The State charged Houk with first-degree arson, attempted murder, willful injury, first-degree burglary, and criminal mischief. Trial commenced in July 2023. From the outset, both parties acknowledged that picking a jury would be difficult. Jury questionnaires suggested—and voir dire quickly confirmed—that many

members of the venire were already familiar with the case. The court and counsel conducted private interviews with each panel member who claimed prior knowledge of Houk, Gayle, or the facts surrounding the fire. Over the course of a two-day selection process, more than two dozen prospective jurors were excused for cause.

On the second day of jury selection, the parties resumed their general voir dire. Among other questions, Houk's attorney asked the panel members how they would respond to the pressure of deliberations if picked to serve on Houk's jury—specifically, whether they would follow the view of their fellow jurors or "hold firm in [their] conviction" if not persuaded of Houk's guilt. Two prospective jurors, S.R.B. and B.H., acknowledged they would defer to a majority view. According to S.R.B.:

> **S.R.B.**: [T]o me, majority always rules. That's how I was—that's how I was brought up, and so I feel like that's how it was in school. And obviously I'm just getting out of high school, so that's kind of what I'm used to, so whenever I'm in a group of 12 people and I'm the one person that either thinks something is one way or the other and the other people think the opposite, especially, I mean, in the age range looking around the room, I don't think that I would—I don't think I would be able to top somebody or me personally just being by myself look at someone and say—look at 11 people and say, "No. I think that this is how it's supposed to be."
> . . .
> **Defense counsel**: [T]his case requires a unanimous verdict, the 12 persons all convinced beyond a reasonable doubt. If I'm understanding you right, it sounds like you're saying you don't necessarily need to be unanimously convinced if you're on the jury if the majority is convinced. Is that your position?
> **S.R.B.**: Correct.

Eighteen-year-old B.H. shared a similar perspective:

> **B.H.**: [B]eing younger than everyone else[,] I feel like it would be harder to say my opinion and not knowing maybe more than they do or understanding more than they do. Maybe they understood

some phrase or something that was said, they understood it more than I did and I'm—I don't know. I don't know.

. . .

**Defense counsel**: If it's 11 people that are convinced beyond a reasonable doubt and you are not and you just go with the majority, that means that you weren't convinced beyond a reasonable doubt. So are you willing to require to be convinced on reasonable doubt, or are you just going to agree with the rest of the panel if that's what happens?

**B.H.**: Just agree with them.

Houk moved to strike S.R.B. and B.H. for cause. In response, the district court informed the panel that "the verdict has to be unanimous, 12 vote guilty, 12 vote not guilty." It then asked, "If I instruct you that that's the law you have to follow, will you follow that law?" S.R.B. and B.H. succinctly responded, "Yes." The court denied Houk's challenge for cause.

After voir dire concluded, but before the parties exercised their peremptory strikes, Houk's counsel made the following request:

At this time, Defense is requesting three additional strikes. . . . I don't know the case off the top of my head, but procedurally in Iowa if a defendant believes that they are denied a [challenge for cause], the correct procedure is to request additional strikes for each juror that Defense believes they were denied.

Counsel then renewed Houk's argument that S.R.B. and B.H. were unqualified to serve because they were willing to return a verdict contrary to their convictions. Counsel also reasserted a challenge to a third panel member, G.V., who Houk sought to excuse for cause on language-proficiency grounds. The Court denied Houk's request as to each of these jurors. The parties then proceeded to pick their jury. Houk used two of his peremptory strikes to remove S.R.B. and B.H. The State struck G.V.

The jury picked to hear Houk's case later found him guilty on all counts. Following his conviction, Houk moved for a new trial, challenging the denial of his motions to strike for cause. He also argued the district court erred by admitting cell tower evidence that placed Houk near the crime scene and traced his path to Texas. The court denied the motion and sentenced Houk to consecutive terms of imprisonment. This appeal followed.

## II.      Removal for Cause

Houk contends the district court erred by declining to strike S.R.B. and B.H. for cause after "they openly admitted they might convict [Houk] without proof beyond a reasonable doubt."[1] According to Houk, the court's ruling "forced [him] to use his peremptory challenges to ensure their removal, thus limiting his ability to remove other potentially biased jurors." We review denial of a challenge for cause for abuse of discretion. *State v. Jonas*, 904 N.W.2d 566, 570 (Iowa 2017); *State v. Tillman*, 514 N.W.2d 105, 107 (Iowa 1994).

Our state and federal constitutions guarantee criminal defendants the right to a fair trial before an impartial jury. *State v. Christensen*, 929 N.W.2d 646, 661 (Iowa 2019) (citing U.S. Const. amends. VI, XIV; Iowa Const. art. I, §§ 9, 10). That right is denied "when a juror is unable to fairly engage in a determination of guilt or

---

[1] The State argues Houk failed to preserve this claim of error because he "never invoked Iowa Rule of Criminal Procedure 2.18(5)(k) by name or used the terms 'impartial' or 'biased'" to explain his challenge for cause. But our error preservation rules are not hypertechnical. *Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017). The legal basis for Houk's argument was obvious, and the district court cited rule 2.18(5) in finding S.R.B. and B.H. were qualified to serve. *See State v. Paredes*, 775 N.W.2d 554, 561 (Iowa 2009) ("[W]here a question is obvious and ruled upon by the district court, the issue is adequately preserved."). We find the issue preserved and proceed to the merits.

innocence based on the evidence at trial and the court's instructions." *Id.* For this reason, Iowa Rule of Criminal Procedure 2.18 permits the parties to seek removal of a prospective juror when, among other circumstances, the juror expresses an opinion or predisposition that "would prevent the juror from rendering a true verdict upon the evidence submitted." Iowa R. Crim. P. 2.18(5)(k).

Ferreting out unqualified jurors is a tricky business, and district courts are "vested with broad discretion" in resolving motions to strike for cause. *Jonas*, 904 N.W.2d at 570. Exercising that discretion is only more complicated in cases like this, where widespread knowledge in a small community leaves many prospective jurors subject to challenge. Still, it is a "trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence." *Morgan v. Illinois*, 504 U.S. 719, 730 (1992) (citation omitted). Our supreme court has cautioned against "skirt[ing] the brink of error" by resolving close questions in favor of a panel member's retention. *Jonas*, 904 N.W.2d at 575 (citation omitted). Even where denial of a challenge for cause is "technically right, . . . it is far better to give the accused the benefit of the doubt." *Id.* (citation omitted).

Such an approach would have been the better one here. "Unanimous jury verdicts are 'fundamental to the American scheme of justice.'" *Trane v. State*, 16 N.W.3d 683, 695 (Iowa 2025) (citation omitted); *see also* Iowa R. Civ. P. 2.22(1) (requiring unanimous verdicts). Contrary to that bedrock principle, S.R.B. and B.H. informed Houk's counsel they were prepared to return a non-unanimous verdict, so long as it matched the prevailing view of their fellow jurors. Although both said "yes" when the district court asked if they could follow the law, we question whether

this was enough to cure their previous admissions.[2]  *See Jonas*, 904 N.W.2d at 571 (suggesting a potential juror who expresses unequivocal bias during voir dire should be "disqualified for cause notwithstanding later, generalized statements the potential juror could be fair").  Houk's motions presented a close call.  Granting them would have been the more cautious path.[3]  *See id.* at 575.

However, we stop short of deciding whether the district court's ruling was an abuse of discretion, because the answer is not necessary to resolve this appeal.  S.R.B. and B.H. were removed by peremptory strike and did not serve on Houk's jury.  "When [a challenged] juror did not serve in the case, it must be shown that the jury that did serve was not impartial."  *State v. Neuendorf*, 509 N.W.2d 743, 747 (Iowa 1993).  Thus, even assuming Houk's peremptory strikes were wasted on a pair of jurors who should have been removed for cause, he is only entitled to a new trial if he can make a "factual showing" that an unqualified juror was seated by result.  *Id.* at 746.

---

[2] The State argues there was nothing problematic about S.R.B. and B.H.'s responses, citing our supreme court's observation that "psychological pressure and small-group dynamics" are "inherent in the jury process."  *State v. Church*, 997 N.W.2d 16, 24 (Iowa 2023).  We do not disagree that persuasion is part of the deliberative process.  But here, S.R.B. and B.H. expressed more than readiness to *change* their opinions about the evidence.  Their voir dire responses indicate they were prepared to return a verdict *contrary* to their opinions about the evidence.  That would be an abdication of their role as jurors, and it would leave little meaning to the notion of a "unanimous" verdict.

[3] We pause to acknowledge our privilege of hindsight.  In ruling on Houk's motions to strike, the district court was asked to make a rapid decision under difficult circumstances.  Jury selection was nearing completion of its second day, and the venire had already been depleted by two dozen strikes for cause.  The prospective jurors who might have replaced S.R.B. and B.H. had not yet been interviewed about their knowledge of the case.  To the extent these factors complicated the district court's analysis, they are not lost on our review.

Houk argues that—had he not used his peremptory strikes on S.R.B. and B.H.—he would have used one to remove a third juror, P.T., who had several connections to the case.[4]  P.T.'s husband was acquainted with Houk through "coffee shops and farm sales," although she did not "remember any specifics" her husband had shared about Houk.  P.T. also said that once, while driving with some friends who knew Gayle, she had "passed the road that would go up" to Gayle's house, which triggered a conversation about the "circumstances of the case."  This was in addition to other "local talk" she had heard about the fire, including rumors that Houk was involved.  Additionally, P.T. had once been in a garden club with the prosecutor's mother, although she had never met the prosecutor.

During her individual interview, Houk's counsel asked P.T. whether she planned to consider anything she learned outside the courtroom when deliberating Houk's case.  Without further prompting, P.T. responded:

> Oh, I don't know that I've ever heard any real particulars about what went on, just that it happened and that was—but, no.  I know right from wrong.  I think I could judge by what information is in the courtroom because I really haven't heard any particulars other than the situation happened, we were concerned about Gayle, and that type of thing.

She also confirmed that any opinion she had previously held regarding Houk's guilt or innocence was "not to be part of [her] opinion at the trial."  Houk did not challenge P.T. for cause.  But he argues on appeal that "her assertion of impartiality is suspect" and that "no reasonable defendant would want a juror who had pre-trial conversations" with other persons convinced of his guilt.

---

[4] Although Houk contends the district court's improper denial of his for-cause challenges deprived him of two peremptory strikes, he points to only one empaneled juror who he would have otherwise stricken.

"Actual juror bias occurs when the evidence shows that a juror, in fact, is unable to lay aside prejudices and judge a case fairly on the merits." *Smith v. State*, 7 N.W.3d 723, 731 (Iowa 2024) (citation omitted). P.T.'s attenuated connections to Houk's case do not support such a finding. "The mere fact a juror has knowledge of parties or witnesses does not indicate actual bias or require juror disqualification." *State v. Webster*, 865 N.W.2d 223, 238–39 (Iowa 2015). And in cases of high publicity, it is not uncommon for jurors to arrive at trial having some familiarity with the facts. "The most that could be expected" of such jurors is that they "lay aside their conclusions and give both the state and the defendant the benefit of their impartial consideration of the evidence." *State v. Beckwith*, 46 N.W.2d 20, 25 (Iowa 1951), *abrogated on other grounds by Neuendorf*, 509 N.W.2d 743. P.T. denied having any knowledge or opinion strong enough to cloud her objective evaluation of the trial evidence.

Because nothing in the record supports Houk's allegation that P.T. was biased, he cannot make the "factual showing" of prejudice necessary for relief. *See Neuendorf*, 509 N.W.2d at 746. Anticipating this problem, Houk asserts the *Neuendorf* test does not apply here. Citing *Jonas*, he argues that "[p]rejudice is presumed when a court improperly refuses to disqualify a potential juror if the defendant identifies the juror which should have been disqualified and requests an additional strike." That is not quite right.

In *Jonas*, our supreme court surveyed trends in state and federal law after *Neuendorf* and adopted a revised approach to evaluating prejudice in cases where a defendant strikes a juror who should have been removed for cause. 904 N.W.2d at 580–83. To avoid "downgrading the importance of disqualification for cause"

and to protect a defendant's right to exercise the number of strikes provided by the rules of criminal procedure, the court recognized that prejudice must sometimes be presumed. *Id.* at 583. But it declined to extend such a presumption to all appeals. Instead, the court held that the presumption of prejudice will apply only where the defendant takes certain steps to preserve it:

> [I]n order to show prejudice when the district court improperly refuses to disqualify a potential juror under Iowa Rule of Criminal Procedure 2.18(5)(k) and thereby causes a defendant to expend a peremptory challenge under rule 2.18(9), the defendant must *specifically ask the court for an additional strike of a particular juror after his peremptory challenges have been exhausted.* Where the defendant makes such a showing, prejudice will then be presumed.

*Id.* (emphasis added) (footnote omitted). The purpose of this procedure—now codified under Iowa Rule of Criminal Procedure 2.18(11)—is to discourage a defendant who is otherwise "satisfied with a jury . . . from engaging in a sandbagging approach of awaiting the results of a jury verdict before crying foul." *Id.* It also avoids "another sandbagging scenario where the defense leaves an unqualified juror on the panel, awaits the verdict, and then appeals." *Id.*

Houk did not follow the *Jonas* procedure. Instead of exhausting his peremptory strikes and then requesting extras, he asked for more strikes up front. And while Houk identified the panel members he believed were errantly retained, he did not name any *other* prospective jurors that he would have preferred to strike instead.[5] Consequently, we have no record to suggest that Houk was dissatisfied

---

[5] Nor could he have. At the time Houk made his *Jonas* request, the panel had yet to be winnowed down through the exercise of either party's peremptory strikes. As it turned out, one of Houk's challenges became moot when the State struck G.V. This illustrates why a defendant must wait until "after his peremptory challenges have been exhausted" to make a *Jonas* request. 904 N.W.2d at 583.

with P.T. or that he would have stricken her in the event S.R.B. or B.H. were excused for cause. This is precisely the scenario that *Jonas* sought to avoid. *See Jonas*, 904 N.W.2d at 582 ("[A] defendant 'cannot stand by silently while an objectionable juror is seated and then, if the verdict is adverse, obtain a new trial.'" (quoting *Trotter v. State*, 576 So.2d 691, 693 (Fla. 1990))).

Where a defendant fails to follow the *Jonas* procedure, there is no presumption of prejudice, and *Neuendorf's* test applies. *Smith*, 7 N.W.3d at 730; *accord Jonas*, 904 N.W.2d at 583 ("*Neuendorf* remains good law where . . . the defendant does not specifically ask for an additional peremptory challenge of a particular juror after exhausting his peremptory challenges under the rule."). Because Houk cannot show prejudice, he is not entitled to a new trial.

## III.     Hearsay Objection

Houk also challenges the district court's admission of two State exhibits. The first exhibit consisted of records obtained from Houk's cell phone service provider, AT&T—including a list of cell towers pinged by Houk's phone on the night of the fire and the following day. The second exhibit was an annotated version of the same cell tower list. It featured handwritten notes that translated the towers' geographic coordinates into approximate street addresses in Iowa, Kansas, and Texas.[6] Both exhibits placed Houk near the scene of the fire at the time of ignition, and they showed the approximate timeline of his journey south.

---

[6] The sheriff's deputy who prepared the annotated copy of the cell tower list testified that he identified the locations of the towers by entering their latitudes and longitudes into Google Maps, a publicly accessible web mapping platform. Houk raised no objection to the deputy's notes, stipulating the list in the annotated exhibit was otherwise identical to the original.

When the State offered the cell phone records at trial, Houk objected on hearsay grounds. The State argued these exhibits were admissible business records. Houk made no reply, and the district court overruled the objection. In a subsequent motion for new trial, Houk renewed his general argument that the information provided by AT&T was "hearsay under the Iowa rules of Evidence, and no exception [applied]." The district court disagreed, finding the documents were admissible as business records and supported by a certificate of authenticity signed by an AT&T custodian. *See* Iowa R. Evid. 5.803(6).

Houk now contends the certificate of authenticity included with the State's exhibits was deficient because it failed to identify the documents within its scope. Houk did not advance this argument below, nor was it implied by his generalized hearsay objection. "To preserve error on an objection to the admission of evidence at trial, counsel must make known a specific objection to give the trial court an opportunity to rule on the objection and correct any error." *Buboltz v. Birusingh*, 962 N.W.2d 747, 757 (Iowa 2021); *accord State v. Dessinger,* 958 N.W.2d 590, 598 (Iowa 2021). Because Houk did not challenge the State's certificate of authenticity at trial or in his post-trial motion, the district court had no opportunity to rule, and the State had no opportunity to correct the alleged foundation problem. Houk has failed to preserve this claim of error. We do not address it further.

**AFFIRMED.**